**MARKS et al. v. JACKSON, Dist. Atty., et al.**

**No. 10912.**

Court of Civil Appeals of Texas. Galveston.
June 8, 1939.

Rehearing Denied June 28, 1939.

Guynes & Colgin and C. L. Bass, both of Houston, and Guynes, Colgin & Vivier, of Houston, on rehearing for appellants.

Ernest A. Knipp and Harvey T. Fleming, both of Houston, for appellees.

GRAVES, Justice.

This was a contest of an election held in the Addicks Independent School District in Harris County on August 15, 1938, for the purpose of determining whether or not the Board of Trustees should be authorized to issue bonds in the amount of $40,000, to supplement federal aid for building and equipping a public free school building.

The election resulted in favor of the issuance of the bonds, the returns canvassed showing a majority of five, the vote being 51 to 46.

The contest was instituted on August 25, 1938, ten days after the election, the contestants being three residents of the district (the appellants here), all alleged to be duly qualified voters and property tax-paying citizens thereof, and the contestees (the appellees here), named in the original petition and notice being the Criminal District Attorney of Harris County, the Hon. Dan W. Jackson, and seven persons named "as trustees" of the school district, all declared to be residents thereof, and duly qualified and acting as such trustees.

The district court found in favor of the contestees, after hearing full evidence from contestants only, the contestees offering none, and judgment was entered upholding the validity of the election.

The alleged grounds for a contest of the election were, (1) that certain persons qualified to vote were not permitted to do so; (2) that certain persons not qualified were permitted to vote; (3) that discrimination was practiced in the conduct of the election, especially in permitting unqualified persons, known to favor the issuance of the bonds, to vote, while others qualified to vote, but known to be against the bonds, were not permitted to do so.

In this court, where a hearing has been advanced pursuant to R.S. Art. 3056, the appellants have presented 22 assignments against the trial court's adverse decree, 20 of which complain of its action in sustaining special exceptions to amended statements or petitions, tendered by them in lieu of certain provisions in their original statement or petition; the twenty-first one is a general contention to the effect that the court erred in rendering judgment for the contestees, while the twenty-second assails the court's exclusion of "the Minutes of the County School Board in so far as they related to the incorporation of Addicks Independent School District and of the Trustees in that district and fixed the boundaries of said corporation,—said objection of appellees being that said evidence offered was immaterial and irrelevant and encumbered the record with a lot of useless matter."

The appellee School District was shown to comprise a sparsely settled area, without an incorporated city or town within its limits. Its population, while not definitely appearing, may be closely approximated from the fact that 97 ballots were counted in the election here under review.

While, as indicated supra, appellants allege fraud and discrimination in the conduct of the challenged election, the trial court, by implication at least, found against such claims, and no evidence sufficient to

even question such finding has been pointed out upon the appeal.

■ The core of the controversy, however, seems to have been over just what application to the fact situation developed by appellants' evidence should be made of this provision in Article VI, § 3a, of our State Constitution, Vernon's Ann.St.: "When an election is held by * * * any political sub-division of a county, or any defined district now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corporations, or any city, town or village, for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the * * * political sub-division, district, city, town or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote."

The court will not in this cause accept the invitation of both sides (although the appellees agree it is not indispensable) to undertake a construction of the quoted section 3a, Article VI, of the Constitution, nor to apply it to what are deemed to be the determinative issues presented by this appeal, for two reasons:

(1) It is held that this appeal may and should be decided upon the fact situation presented here, irrespective of how that constitutional provision should be construed and applied in a proper case.

(2) This court, in a like contested-election case, No. 10,923, styled Gus A. Markowsky et al., appellants, v. J. T. Newman et al., appellees, from the district court of DeWitt County, have, on June 1 of 1939, certified to the Supreme Court questions seeking to elicit an authoritative declaration as to what is the correct construction and application of such section 3a.

■ Two well-settled rules of law governing such controversies as the one at bar may be thus stated:

(1) " * * * In a statutory election contest within the purview of cited chapter 9, title 50, article 3041 et seq., of our Revised Statutes, such as this one was, the scope of the court's inquiry is limited to matters pertaining strictly and directly to the election itself, together with happenings on the date thereof, such as the casting and counting of the ballots voted therein, as well as the action and conduct of the of-ficers holding it." Border v. Abell, Tex. Civ.App., 111 S.W.2d 1186, 1188, writ of error refused.

■ (2) In an election-contest, the burden is on the contestants to allege and prove either that a different result should have been reached by counting or not counting certain specified votes; or that the irregularities in the conduct of it were such as to render it impossible to determine the true will of the majority of the voters participating in the election; and irregularities in the conduct of the election, which cannot be demonstrated to have materially affected the result, are immaterial. Hill v. Smithville, etc., (Tex.Com.App.), 251 S.W. 209; Kincannon v. Mills, (Tex.Civ.App.), 275 S.W. 1083, 1084; McCormick v. Jester, 53 Tex.Civ.App. 306, 115 S.W. 278; State v. Etheridge (Tex.Civ.App.), 20 S.W.2d 808; State v. Fletcher (Tex.Civ.App.), 50 S.W.2d 450; Wilmarth v. Reagan (Tex. Civ.App.) 231 S.W. 445.

■ A further preliminary elimination may be had by here quoting the trial court's findings, under certain allegations of appellants not hereinbefore referred to, to the effect that the election officers in this instance did not have properly certified lists either of the qualified voters or the polls, and that various persons in the school district had been deprived of their votes, because they had not personally rendered their property for taxation; such findings being as follows: "There is no evidence, as I discussed with counsel for Contestants at the time some of this testimony was rendered,—there is no evidence in the case which would tend to show that any voter was denied the right to vote because of any condition about a poll-list. There is no testimony that any voter was denied the privilege of voting because of the absence at the polls of a certified-list of those who had rendered property. There is no evidence that any person who had rendered his property through an agent, or otherwise, as distinguished from a personal rendition, was denied the right to vote, or that there was any such person in the school district. There is no evidence that there was even any person in the school district who had rendered his property through an agent, or anyone else, much less any evidence raising any issue that any person who had rendered his property through an agent, or member of his family, had been denied the right to vote. The evidence just doesn't raise it."

These findings on that phase are neither materially nor successfully controverted; so that, appellants' whole case on the facts gets down to whether or not—of the 11 persons whose votes were called in question by them at all—they have shown there were enough qualified voters among them not permitted to vote, along with unqualified ones who were permitted to vote, to have changed the declared result. It seems plain they have not done so.

■ In contending that the trial court prejudicially struck out allegations of substantial rights in sustaining the complained-of special exceptions to their superseded pleadings, appellants seem to further assert that the court was without authority of law in such a contest to pass upon exceptions to their amended pleadings or statements at all; aside from the distinction that has been made under our decisions between such election contests and civil cases in general, this court does not doubt either the jurisdiction or the power of the court below to so act as it did upon the exceptions, under these authorities: Article 1731, R.S.1925; Ashford v. Goodwin, 103 Tex. 491, 131 S.W. 535, Ann.Cas.1913A, 699; Bailey v. Fly, 97 Tex. 425, 79 S.W. 299; Childress v. Robinson, Tex.Civ.App., 161 S.W. 78; Constitution of Texas, Art. 5, § 25, Vernon's Ann.St.; Cook v. Epperson, Tex.Civ.App., 288 S.W. 556; Corpus Juris, "Pleading", 49 C.J. 374, par. 475; Court Rules, 84 Tex. 695, District and County Court Rules 6 to 18, inclusive; Gray v. State ex rel. Langham, 19 Tex. Civ.App. 521, 49 S.W. 699; Lipscomb v. Perry, 100 S.W. 122, 96 S.W. 1069; Marsden v. Troy, Tex.Civ.App., 189 S.W. 960.

Especially when the statutory authority appeared to have both expressly and impliedly been granted under R.S. Arts. 3047 and 3069, in both of which the same procedure seems to have been contemplated in a bond-election case, though not specified in detail, as is prevalent in like contests for county office, as well as in civil causes generally.

■ In any event, however, no reversible error was shown in this instance on this feature, for these reasons: (1) With possibly three or four exceptions—none of which went, as asserted, to issues of substantial right in appellants—all the same matters to which such exceptions were sustained in the superseded pleadings were in substance brought forward, in one form or another, into appellants' trial pleadings; (2) the trial having been before the court without a jury, the record undisputedly shows the court to have heard all evidence tendered by the appellants relating to the election anyway, that is, the same as if such exceptions had not been sustained; wherefore, no injury was entailed; (3) an examination of the court's findings and the supporting evidence further shows that the purport of such full proof so tendered and heard, despite the sustaining of the exceptions, was sufficient to support the court's judgment the other way, rather than appellants' appraisal of its effect.

■ Recurring to the 11 persons whose votes constituted the sole subject-matter of this contest, in the sense that only their votes were in question, they were as follows: (1) Emory M. Marks; (2) E. A. Beeler, Jr.; (3) L. Koch; (4) Cornelius Johnson; (5) Jas. Williams; (6) Mrs. Norma Gulbow; (7) A. D. Mohle; (8) C. C. Waggoner; (9) Gabe Jordan; (10) Tim Miles, one of the contestants; and (11) Mrs. Louis Sauer.

This characterization as to each of these, together with its effect upon the result, as quoted from the appellees' brief, is thought to correctly reflect both the state of the evidence and the trial court's presumed findings thereon in each instance as being in support of the judgment rendered:

"The contestants admit the proof shows the last two named were not qualified to vote, and that they voted against the bond issues. Their votes, deducted from those opposed, would leave the result 51 to 44.

"It conclusively shows that Gabe Jordan voted against the bond issue, and that he was disqualified from voting. This would make the vote 51 to 43, leaving a majority of 8 in favor.

"Mr. Louis Koch testified that he did not vote because he did not choose to vote; his vote cannot be counted. So that, if all of the remaining persons were counted as claimed by the contestants, the result would still have been the same.

"As shown above, the result should be counted as 51 to 43, eliminating the votes of Tim Miles, Mrs. Sauer, and Jordan. There can, we think, be no question about Mr. Koch. If he did not choose to vote that was his privilege. There are only seven remaining persons whose votes can be questioned at all, one way or the other. And it would make no difference how they

were placed. If you eliminate Waggoner and Mrs. Gulbow from the affirmative side, and add the other five to the negative, there is still a majority of one in favor."

Without extending this opinion further, for the reasons and upon the conclusions stated, it is held that the appellants have failed to sustain the burden so resting upon them, hence have not shown under the facts that a different judgment could properly be rendered, were a reversal had. The judgment of the learned trial court will, therefore, be affirmed.

Affirmed.