**ROBERTS et al. v. HALL, Mayor, et al.**

No. 5498.

Court of Civil Appeals of Texas. Amarillo.

Dec. 14, 1942.

Rehearing Denied Jan. 18, 1943.

Crenshaw, Dupree & Milam, of Lubbock, and T. Wade Potter, of Littlefield, for appellants.

E. A. Bills and E. S. Rowe, both of Littlefield, for appellees.

JACKSON, Chief Justice.

J. M. Roberts, A. L. Hood, G. W. Miller, J. C. Nash, J. C. Brannen and J. H. Lippard, contestants, instituted this action in the District Court of Lamb County against Homer Hall, the Mayor, Beeman Phillips and J. E. Faust, Commissioners of the City of Littlefield, Texas, the contestees, to litigate the validity of a revenue bond election held in the city on October 14, 1941, to determine whether the city commissioners should issue bonds of the city in the sum of $275,000. The bonds were to be utilized to purchase or construct and install an electric light, power and distribution plant in

and for the city. An order was entered September 23, 1941, by the city commission directing an election to be held on October 14th thereafter. The election was held in compliance with the order; the judges of the election made returns; the city commission canvassed the returns, determined that 162 votes had been cast in favor of the bonds, 122 against the bonds, and declared that the election had resulted in favor of issuing the revenue bonds for the light plant.

The contestants say the result of the election as returned by the judges and declared by the city commission was erroneous, should be held void and set aside because many disqualified voters cast illegal votes for the bond issue; some qualified voters presented themselves at the polls to cast their ballots against the bond issue but were not permitted to vote; that by fraudulent acts and misrepresentations of the city commission many voters who intended to vote against the bond issue were induced to vote for the bonds; that by threatening to increase the valuation of their property for taxes and to boycott the business of some business men, many qualified voters opposed to the bond issue were intimidated and deterred from voting against the bonds or caused to refrain from participating in the election. If the illegal ballots cast for the bonds were eliminated, the qualified voters who were not allowed to vote were permitted to cast their ballots and those who were induced to vote for the bonds or to refrain from voting in the election because of intimidation are considered, the votes affected would be sufficient to change the result of the election or render it so uncertain as to be incapable of ascertainment and should be held invalid.

The contestees answered by special exceptions, general and special denials and challenged the legality of a number of ballots cast against the bonds because of the disqualification of certain named voters in the election.

When the contest was called for trial the court sustained numerous special exceptions levelled by the contestees at the statement of the grounds of contest contained in paragraphs 12 and 13 of contestants' petition.

Contestants amended their statement and omitted paragraphs 12, 13 and 14 from their amended petition and made a motion for a continuance on account of absent witnesses who would testify to material facts.

This motion was overruled and contestants declined to offer any testimony at the trial because they said the court having sustained the exceptions to paragraphs 12 and 13 alleging fraud and intimidation, that should they prove all of the remaining number of votes challenged to be illegal, there would not be a sufficient number to change the result of the election.

The contestees introduced their testimony; the court opened the ballot box, examined the votes and held that there were 256 legal votes in favor of the bonds, 212 legal votes against the bonds and the City of Littlefield was thereby authorized to issue the revenue bonds for the light plant.

In paragraph 12 the contestants alleged that on July 17, 1941, the City Commission of the City of Littlefield ordered an election to be held on August 5th thereafter to determine whether the city should issue $225,000 in revenue bonds for the purpose of acquiring, constructing and installing an electric light, power and distribution plant in and for the city; that in the campaign in this first election there was a controversy between the advocates and opponents of the bond issue as to whether the revenues derived from the operation of the proposed light plant could be used for any purpose other than to pay off and discharge the principal and interest on the bonds. Many voters believed the revenue from the proposed plant could be used only to pay off and satisfy the principal and interest on said bonds and voted against the issuance thereof and the first election was defeated. When the second election was called to be held on October 14, 1941, to determine whether the city should issue $275,000 of revenue bonds with which to purchase or build a light, power and distribution plant for the city, the commissioners ordered a purported election to determine whether the city should adopt the provisions of Chapter 18, General Laws of the State of Texas, passed by the Forty-third Legislature at the Fourth Called Session thereof in 1934, and the amendments thereto, Vernon's Ann.Civ. St. art. 1118c, relating to the annual transfer and appropriation of the income and revenue to be derived from the operation of certain owned public utilities. They assert the law did not apply to the City of Littlefield since it did not own and operate its light system and water works system as said law required; that the commission knew such facts and the election to adopt said law was ordered for the purpose of deceiving the voters and inducing them to

believe if they voted to adopt said law and for the bonds for the light plant the city could appropriate a portion of the revenues from the proposed plant for other municipal purposes; that from the date the elections were ordered, to and including the day of the elections, the advocates of the bond issue represented to the voters that the adoption of said law would authorize the city to use the revenues of the proposed light plant for other purposes; that each and all the parties making such representations knew, or should have known, that, under the law "the remaining income and revenue of such system" could not be appropriated to other departments of the municipal government" since said city neither owned nor operated its light system; that as a result of such misrepresentations and the calling of the election for the adoption of said law and said misrepresentation, numerous voters who had voted against the bond issue of $225,000 in the first election were induced to and did vote in the second election for the $275,000 issue; that had it not been for said purported election and such false representations 36 qualified voters, whose names are set out, would have voted against the bond issue in the second election and would have been a sufficient number of votes to have defeated the bond election.

■ The contestants claimed that all their allegations are admitted as true since exceptions were sustained thereto. An exception does not admit the truth of legal conclusions alleged nor the correctness of the law as interpreted and construed by a pleading. Bartlett v. Terrell et al., Tex. Civ.App., 292 S.W. 273, writ refused; McGinty et al. v. Texas Power & Light Co., Tex.Civ.App., 71 S.W.2d 354, writ refused. It is obvious that the allegations in paragraph 12 upon which fraud is based are conclusions of law and exceptions thereto did not admit the soundness of the construction or interpretation of the law.

The contestants contend that such alleged fraud and misrepresentations induced 36 voters to cast their ballot in favor of the bonds and if such fraud and misrepresentations had not been made such voters would have cast their ballots against the bonds, which, they contend, was a legal ground of contest and the trial court erred in sustaining the exceptions to said allegations.

■■ Ordering the election to adopt the law to be held on the same day the bond election was had did not affect the validity of either election. There is no allegation that the advocates of the bond issue were more learned in the law than the opponents of the bond issue. It is not claimed that any fiduciary relation existed between the advocates and the opponents of the bonds, hence, as the law imputes to all citizens qualified to vote a knowledge of the law, there is no such fraud alleged in paragraph 12 as would sustain a contest of the election of the bond issue. It is the law that questions submitted to the voters for determination must be ascertained from the official orders and notices and not from such promises, either oral or written, as are here alleged and relied on. Grayson County et al. v. Harrell et al., Tex.Civ. App., 202 S.W. 160.

District courts have constitutional authority to hear contests of elections for certain offices and also to hear contests of elections "for other purposes than the election of officers." Articles 3041, 3069, Vernon's Ann.Civ.St., provides that contest for the validity of other elections may be had in district court under the same rules, as far as applicable, as are prescribed for contesting the validity of an election for a county office.

■ In Turner v. Allen, Tex.Civ.App., 254 S.W. 630, 635, it is said: "In an election contest in the district court, under the statutory provisions of this state, the authority and jurisdiction of the court is limited and confined in the inquiry to matters happening on the day of election, and pertaining strictly to the election, such as the casting and counting of the ballots, and the actions and conduct of the officers holding the election. The contestant must succeed or fail according to the result of the inquiry touching such matters only. Articles 3062 and 3063, Revised Statutes; Canales v. Mullin, Tex.Civ.App., 185 S.W. 420; Cofield v. Britton [50 Tex.Civ.App. 208], 109 S.W. 493; Bassel v. Shanklin, Tex.Civ. App., 183 S.W. 105; Norman v. Thompson, 96 Tex. 250, 72 S.W. [62], 63; Lowery v. Briggs, Tex.Civ.App., 73 S.W. 1062; Kilgore v. Jackson, 55 Tex.Civ.App. 99, 118 S.W. 819, 823."

Articles 3062 and 3063 of the Revised Statute 1914, cited in the foregoing quotation, with minor textual changes, are now articles 3053 and 3054, Vernon's Annotated Civil Statutes.

The law announced in Turner v. Allen, supra, is followed in Ladd et al. v. Yett, Mayor et al., Tex.Civ.App., 273 S.W. 1006;

Marks et al. v. Jackson, Dist. Atty., et al., Tex.Civ.App., 130 S.W.2d 925; Schrock et al. v. Hylton et al., Tex.Civ.App., 133 S.W.2d 175. The same principles are applied to contested bond elections in Border et al. v. Abell, County Atty., Tex.Civ.App., 111 S.W.2d 1186, and in Warren et al. v. Robinson, County Atty., Tex.Civ.App., 32 S.W.2d 871.

In paragraph 13 the contestants alleged that after the second election was ordered the members of the city commission and other advocates of the bond issue pursued a course of threats and intimidation against the voters known or believed to be opposed to the bond issue; that on numerous occasions the mayor and others threatened to raise the tax valuation of the property of many voters who voted against the bonds in the first election if they did not vote for the bonds in the election of October 14, 1941; that they also threatened to boycott numerous business men engaged in business in the City of Littlefield if they did not vote for the bond issue; that as a result of such threats and intimidation many voters, who at the first election voted against the bonds, cast their ballots for the $275,000 issue on October 14th, while others refrained from going to the polls and more than 50 qualified voters either changed and voted for the bonds or were caused to refrain from voting but, had they been permitted to vote, the bond election would have been defeated. Numerous exceptions were offered by contestees to this paragraph of contestants' statement of their ground of contest, all of which were sustained. Contestees' exceptions attack the 13th paragraph of contestants' statement because neither the names of "other advocates" or "proponents" of the bond issue nor the names of the "others" joining with the mayor in making threats are stated. The petition does not reveal the names of the "numerous taxpayers" to whom threats were made nor the names of the "numerous business men" who were intimidated, does not give the names of any of the "more than 50 voters" who changed their votes or refrained from voting in the election, and the city commission had no power or authority to place an illegal or unjust tax value on the property of a citizen since all ad valorem taxes must be equal and uniform under the Constitution and Laws of Texas.

Article 3042, Vernon's Ann.Civ.St., provides in part that "any person intending to contest the election of any one holding a certificate of election for any office * * shall * * * give him a notice thereof in writing and deliver to him, his agent or attorney, a written statement of the ground on which such contestant relies to sustain such contest." The statute provides for an amendment to the grounds of contest which is based upon some ground or grounds specified in the statute. If the statement is insufficient and contestees wish to attack the pleading therefor, the attack should be made by exceptions and if the exceptions are sustained the contestants are given an opportunity to amend. 16 Tex. Jur. 161, § 125.

The contestants did not undertake to supply the information sought by the exceptions of the contestees, the absence of which was the basis of the court's ruling. If contestants were not in a position to be more specific in advising the court and contestees of the names of other "advocates" or "proponents" of the bond issue, or the names of "others" who joined the mayor in making threats, or the names of any of the "numerous taxpayers" to whom threats were made, or the names of any of the "numerous business men" who were intimidated, or the names of their intimidators, or the names of the "more than 50 voters" whose ballots were affected, neither the court nor the contestees were informed as to who were intimidated, nor as to who was guilty of the intimidating. The contestees were not advised as to any certain specified votes which would change the result of the election by being counted or not being counted.

In Marks et al. v. Jackson, Dist. Atty., supra [130 S.W.2d 927] it is said: "In an election-contest, the burden is on the contestants to allege and prove either that a different result should have been reached by counting or not counting certain specified votes; or that the irregularities in the conduct of it were such as to render it impossible to determine the true will of the majority of the voters participating in the election; and irregularities in the conduct of the election, which cannot be demonstrated to have materially affected the result, are immaterial. Hill v. Smithville [Independent School Dist.], Tex.Com.App., 251 S.W. 209; Kincannon v. Mills, Tex.Civ.App., 275 S.W. 1083, 1084; McCormick v. Jester, 53 Tex.Civ.App. 306, 115 S.W. 278; State v. Etheridge, Tex.Civ.App., 20 S.W.2d

808; State v. Fletcher, Tex.Civ.App., 50 S.W.2d 450; Wilmarth v. Reagan, Tex.Civ. App., 231 S.W. 445."

In Davis v. Harper, 17 Tex.Civ.App. 88, 42 S.W. 788, the court says: "It was not error to refuse to allow the numbers of the tickets and poll list for the identification of voters to be introduced in evidence. If illegal votes were cast for appellee, as alleged by appellant, they should have been named, and the evidence confined to them. There was no propriety in, nor necessity for, removing the secrecy of the ballot from all the votes. There was no attempt to identify any illegal voter."

In Oxley v. Allen, 49 Tex.Civ.App. 90, 107 S.W. 945, 947, the court holds that there was no error in sustaining the exceptions to the statement of the grounds of contest because the number and names of the persons who it is claimed were deprived of voting is not alleged. The court concludes with this statement:

"We think it was necessary on the part of the pleader to either give the number and the names of the parties who were thus deprived of the privilege of voting, in order that the contestee might be able to meet this issue with proof, or to have alleged some sufficient excuse for failing so to do, which was not done. A general statement, as contained in the petition, in our judgment, is not sufficient."

The judgment is affirmed.