DE LA GARZA et al. v. SALINAS et al.

No. 12510.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 18, 1953.

397

Magus F. Smith, McAllen, for appellants.

Royce A. Oxford and Joe V. Alamia, Edinburg, for appellees.

W. O. MURRAY, Chief Justice.

This is an election contest instituted by Rodolfo de la Garza, Leo J. Leo and Manuel Conde, as contestants, against Saragoza Salinas, Nieves E. Garcia and Ernesto Jackson, as contestees, seeking to have contestants declared to be elected to three places on the Board of School Trustees of the Tabasco Consolidated Independent School District of Hidalgo County, Texas.

Upon a hearing, the trial court rendered judgment in favor of contestees and contestants have prosecuted this appeal.

Appellants present only the following point:

"The trial court erred in refusing Contestants' motion to open the boxes containing the marked ballots and recount such ballots, because the uncontradicted testimony showed that the election officials were biased and prejudiced against Contestants and in favor of Contestees, the results as declared by the election officials were incorrect, having been arbitrarily set by such election officials without regard to the number of ballots cast for each candidate, and the results as declared by the election officials showed more ballots counted than were actually cast."

Appellants do not contend that they offered any evidence showing that illegal votes were cast and counted for appellees. Their only contention is that the ballots were not properly counted. In support of this contention they cited numerous irregularities and errors in the conduct of the election. They point out that Miss Florine Baker, presiding judge of the election, told Arturo Garza, a supervisor for appellants, "You go into the counting room where they are counting the votes." Arturo Garza testified, "She (Miss Baker) said that we were not to look at the ballots, that we were to have seats in the room where they were counting. She told us that we were to remain quiet and not say anything, that we were not to talk, and that if I saw anything wrong that I was to write it out." In so instructing the supervisors the presiding judge was stating fairly accurately the provisions of Article 3.05 Election Code, V.A.T.S., which provides in part as follows:

" * * * He shall not be permitted to enter into any conversation with the judges or clerks regarding the election while it is progressing, except to call the attention of the judges or clerks to any irregularity or violation of the law that he may observe. Such supervisor shall call the attention of officers holding such election to any fraud, irregularity or mistake, illegal voting

attempted, or legal voting prevented, or other failure to comply with law governing such election at the time it occurs, if practicable, and if he has knowledge thereof at the time."

The only mistake she made was in telling the supervisors they were not to see the ballots and that they could only make their complaints in writing. In instructing the supervisors that she had the authority of a district judge, the presiding judge was supported by the provisions of Article 8.05 of the Election Code, V.A.T.S., reading as follows:

"Judges of election are authorized to administer oaths to ascertain all facts necessary to a fair and impartial election. The presiding judge of election while in the discharge of his duties as such, shall have the power of the district judge to enforce order and keep the peace."

■■ This supervisor also testified that on one occasion the tallying clerks were five votes apart on their counting and that this decrepancy was corrected by adding two votes to the votes of appellees and adding three votes to those of the appellants. It is apparent that this matter could have had very little effect on the total vote cast for each side, and in view of the fact that appellees were elected by a majority of more than eighty votes, according to the election returns, this instance could not have in any way affected the final result of the election. Appellants further contend that most of the election officials were either related to members of the School Board or were working for one Beto Reyna, who was supposed to be a political leader of the dominant faction in the school district and that all of the election officials belonged to the dominating political faction in the school district, and that no one was on the election board who was friendly to appellants. This constituted an illegality which could properly be considered by the trial judge in determining whether or not he would unseal the ballot boxes and recount the ballots, but it is not sufficient to require that he do so. Appellants further complain that the school superintendent,

H. C. Baker, and the school tax collector, Chito Cavazos, were seen around the school house off and on during the time of the election. One of the supervisors overheard H. C. Baker instruct two of the clerks to get him "out of there," evidently meaning to get Arturo Garza out of the room where the votes were being counted. Both Baker and Cavazos had offices in the school building where the election was being held, and their presence was explained by the fact that they were going to and from their offices. One of the appellants, Leo J. Leo, had made an election bet but had withdrawn it before the election, when he found out it was against the law. At the close of the election, Cavazos, the tax collector, who was not an election official, took charge of the election, figured up the results and announced such results. After the results were announced some one, probably one of the election officials, called Mr. Cavazos' attention to the fact that more votes had been counted than had actually been cast. Thereupon Cavazos went back into the room and started figuring again, and without recounting the votes announced different results. These results were certified as being the correct results. Arturo Garza, supervisor for appellants, testified that he was not permitted to look at the ballots to see how they were marked but that by stretching his neck he was able to see a few of the ballots but not many. The record does not show that he even requested the right to see the ballots as they were counted. He also admitted that he could have seen more. Appellants contend that more votes were counted than were actually cast, but it is shown that there were a number of absentee votes, and when these are added to the votes cast at the election the total vote, as declared by the election officials, does not exceed the total number of votes cast.

■ The trial judge who heard the testimony and saw the witnesses, refused to unseal the ballot boxes and recount the ballots. This was a matter largely addressed to his discretion, and his action will not be reversed upon appeal unless it be shown that he abused the discretion placed in him in such matters.

We are cited to the case of Meriwether v. Stanfield, Tex.Civ.App., 196 S.W. 2d 704, as authority supporting appellants' contention that the trial judge abused his discretion in not unsealing the ballot boxes and recounting the ballots. We are of the opinion that that case does not support the contention of appellants. It was a contest of a primary election, which is governed by the provisions of Chapter 13, art. 13.30 of the Election Code, V.A.T.S., while this case relates to a general election, governed by the provisions of Chapter 9 of the Election Code, V.A.T.S. In that case the trial judge unsealed the ballot boxes and recounted the ballots, and the question there presented was whether or not he had abused his discretion in doing so. Where the trial judge refused to unseal the ballot boxes and recount the ballots, the question is, did he abuse his discretion in so refusing? We are of the opinion that the evidence in this case is not sufficient to show that the trial judge abused his discretion in refusing to unseal and reopen the ballot boxes and recount the ballots. Unless he is shown to have abused his discretion, his determination of the matter is binding upon this Court.

The judgment of the trial court is affirmed.