M. C. JORDAN et al., Appellants,

v.

Dwayne V. OVERSTREET, County Attorney, Appellee.

No. 6489.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 26, 1961.

Rehearing Denied Nov. 22, 1961.

Musslewhite & Musslewhite, Lufkin, Graves, Dougherty, Gee & Hearon, Austin, for appellant.

Keith, Mehaffy, McNicholas & Weber, Beaumont, for appellee.

McNEILL, Justice.

An election was ordered to be held January 7, 1961, by the County Judge of Hardin County to determine whether the Batson Independent School District and Saratoga Independent School District should be consolidated. For consolidation carried by a big majority in the Saratoga district but returns showed there was only a majority of ten votes for consolidation in the Batson district. Four resident tax paying voters of the Batson district gave notice of contest of the election in said district, which was served upon Dwayne Overstreet, County Attorney of said county, within the 30 day period and suit was also filed within such period naming only the county attorney contestee. A plea to the jurisdiction of the court was filed by contestee, asserting that since he was not a proper party contestee and none such had been served with notice nor made contestee under Art. 9.31 of the Election Code, V.A.T.S., the court had no jurisdiction to determine the questions raised by the contest. The court in due course overruled this plea. By counter-point appellee raises the issue here. Article 9.31, in pertinent part, reads:

"In any case provided for in the preceding Section [art. 9.30], the county attorney of the county, or if there is no county attorney, the district attorney of the district, or the mayor of the city, town or village, or the officer who declared the official result of said election, or one of them, as the case may be, shall be made the contestee, and shall be served with notice and statement, and shall file his reply thereto as in the case of a contest for office; * * *."

The principal case relied upon by appellee to sustain his position that he was not a

proper party contestee is Hooker v. Foster, 117 Tex. 237, 1 S.W.2d 276. This is the landmark case on the question. There an election was held to determine whether an additional maintenance tax should be levied in the Shiro Independent School District. After the election certain residents of the district contested its result by serving notice upon and bringing a proceeding against the members of the school district. The county attorney of the county was neither served with notice nor made a party contestee, and a plea to the jurisdiction of the district court was urged on account thereof. The trial court sustained this plea and dismissed the suit. The Court of Civil Appeals certified to the Supreme Court the question whether the trial court erred. That court held the trial court did err in sustaining the plea. In reaching this answer the Supreme Court reasoned that since the county attorney was not the legal advisor of the independent school district he was not legally concerned with the proceeding, and only that officer or officers peculiarly or legally concerned with the outcome of the election was a necessary party under Art. 3070 (now Art. 9.31 Election Code).

It was held in Funderburk v. Schulz, Tex.Civ.App., 293 S.W.2d 803, that the county attorney is not a proper contestee in an election contest brought by citizens of a school district attacking a bond election held therein. And this court in Hayter v. Baker, 293 S.W. 331, held he was not a proper party contestee in a suit attacking a city election. But the present is not a suit involving a single unit of the county as is one school district or city. When two school districts are sought to be consolidated, the election must be administered by the county government. Art. 2806, Vernon's Ann.Tex.St. requires the petition for a consolidation election to be submitted to the county judge, who is required to issue the order calling the election and to issue notice of the election. This article also requires the Commissioners Court to canvass the returns and to declare the result of the election. It is, therefore, the primary duty of the county government to see that a proper election is held and its results declared. In connection with this, it is the duty of the county attorney to advise the county officials upon their action. Neither the school districts involved were proper party contestees since each school board's "only proper concern would be with a fair determination of contests, not necessarily with upholding as a contestee the declared results of elections." Funderburk v. Schulz, Tex.Civ.App., 293 S.W.2d 803, 807. The notice and petition here did not expressly make the canvassing body (the Commisioners Court, or one of its members) a party contestee. But since the county attorney is the legal advisor of the court and by force of the very language of Art. 9.31 he is named a contestee, the action was one, in effect, against the members of the Commissioners Court and necessarily brought their action into question. Thus, there is no real distinction whether one or more members of the court was made directly the party contestee. This view comports with the holdings in Rister v. Plowman, Tex.Civ.App., 98 S.W.2d 264, and Baker v. Webster, Tex.Civ.App., 123 S.W.2d 690. The trial court's ruling is upheld.

■■ Appellants' first point asserts that the trial court should have ruled that the election had failed to carry for consolidation, because the order of the Commissioners Court declaring the result of the election held in the Batson district, and other evidence, established the proposition did not receive a majority of the valid votes cast. The returns of the election from the Batson voting place made by its officials certified that there were cast 365 votes of which 138 votes were "for" consolidation and 128 votes "against" consolidation. The Commissioners Court on January 9, 1961, canvassed these returns and its order declaring the result of the election in the Batson district stated "there were cast at said election 365 valid and legal votes of which number there were cast for consolidation 138 votes and against consolidation 128 votes." The order then declared a

majority of the qualified voters of said district voted for consolidation. Appellants attack the order of the Commissioners Court declaring this result of the election, asserting that on its face it was shown that a majority did not vote "for" consolidation and that the proposition for consolidation should be declared lost in the Batson district. It is apparent that an error was made either in the figure 365 showing the total number of votes cast or in the number for or against consolidation. The returns of the election are in evidence. The poll list which was made listing each voter's name revealed that 265 votes were cast in the election. At the trial it was also shown that a Mrs. Walter B. Johnson voted just before the polls closed, and her name was inadvertently left off the list, thus indicating there were actually 266 votes cast. The tally list of the election officials also was in evidence and reflected 138 votes for consolidation and 128 against consolidation. Ordinarily the order declaring the result of an election by the Commissioners Court is conclusive of the number of votes cast. But it appears the order here involved so declaring is self-contradictory. The returns prepared and delivered by the election officials to the Commissioners Court, we think, clearly show that the election officials made a mistake in the total number of votes cast, and the Commissioners Court carried forward the same mistake. The present is a situation comparable to that of a judgment of a trial court. If the judgment is ambiguous, the judgment roll may be examined to relieve the ambiguity. Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 567, 111 A.L.R. 1152. The trial court examined the "judgment roll", the various returns of the election officials, to eliminate the ambiguity in the order of the Commissioners Court, and we think he did so properly.

◼ The 2nd, 3rd, 4th, and 5th points urge that the trial court erred in refusing to grant appellees' request to open the ballot box because of errors and irregularities apparent. Much stress is laid upon the fact that there were 99 "valid and legal votes" which were cast and unaccounted for. We are not persuaded this is true. The detailed records of the election officials as pointed out next above clearly reflected that 266 votes were cast. It is easily seen that an error in failing to put one voter's name on the poll list may take place where polls are open from 7 o'clock a. m. until 7 p. m., and the election officials become weary at the close of the long day. Under such circumstances one person's name could be omitted from the list. In connection with these points, as well as point one, appellants press upon us the case of Sewell v. Chambers, Tex.Civ.App., 209 S.W.2d 363. We have studied that case carefully but we do not believe it controls the present situation. The last paragraph of the Sewell-Chambers case on p. 366 sums up most of the errors there shown to have taken place, but in addition—we think an important addition— votes were recorded and counted as cast by four persons who had not voted at all and the election officials had counted eleven votes of eleven unknown persons. This we think is undoubtedly "some evidence" of fraud under Art. 3130, and this together with the many other irregularities justified the opening and examination of the ballots in the ballot box. While there were, undoubtedly, some irregularities in the election now involved, as will be set out hereinafter, we believe they are not of such character as to compel the action sought by appellants. Unless there is substantial evidence of wrongdoing or fraud we think the discretion of the trial court as to whether the ballot box is opened is one that should control. De La Garza v. Salinas, Tex.Civ. App., 255 S.W.2d 396.

◼ As a basis for the order calling the election by the county judge there was submitted to him three different sheets of paper at the top of each of which there appears identical language addressed to the County Judge of Hardin County, Texas, requesting him to call an election in the two districts for the purpose of determining whether they should be consolidated for school pur-

poses. Each of these pages was dated November 19, 1960, and bore the signatures of different qualified voters of the Batson district, and no one page contained as many as 20 signatures. The three pages were fastened together and submitted to the County Judge as "the petition" as a basis for calling the election. Appellant's 6th point contends that since Article 2806, V.A.T.S., provides that on "the petition" of 20 or a majority of the legally qualified voters of each district the county judge shall call such election and since no one of the pages or sheets had the requisite number of signatures, the election was improperly called. To sustain this point we would give precedence to form over substance. We decline to do this. Sanders v. Mason, 197 Ga. 522, 29 S.E.2d 780; 18 Am.Jur. 244.

Appellee concedes that appellants' 7th and 18th points are good. The 7th point reflects that two women who had become 21 years of age but held no poll tax receipt nor exemption certificates were improperly allowed to vote, and the 18th point asserts that because three other voters who failed to sign, mark, or make an "X" upon the stub attached to the ballot voted that these were illegal votes. In addition to these five, appellee concedes that two other voters, those of one Fregia and the Rev. Tarver, the votes of which the trial court excluded, should not be counted.

■ The 8th point asserts the trial court erred in failing to declare the votes of J. D. Daniel and wife, Nancy Daniel, void because they were shown to have been non-residents of the district at the time they voted, and the 9th point asserts that the implied finding of the court that they were residents of the district is against the great weight and preponderance of the evidence. The 10th point asserts that the voter Floyd Hooks was not a resident of the district when he voted and the 11th point claims that the implied finding of the court that he was, is against the great weight and preponderance of the evidence. Whether a person is a resident of a district

or not is distinctly one of intention and of fact. McBeth v. Streib, Tex.Civ.App., 96 S.W.2d 992. Even though he may be temporarily out of the district, if his intention is to return, it is generally held that he is a qualified voter in the district. McBride v. Cantu, Tex.Civ.App., 143 S.W.2d 126, 127; Reid v. King, Tex.Civ.App., 227 S.W. 960, 962, by this court; Huff v. Duffield, Tex.Civ.App., 251 S.W. 298. The testimony with reference to the Daniels is that they had lived for years in the Batson district but about 3 months before the election they moved to Amelia in Jefferson County so that Mrs. Daniel, who was expecting a child, would be near her doctor and also since Daniel was working temporarily at High Island it would save gasoline in going to and from work by their living in Amelia. However, they own their home at Batson and left some of their furniture there. They even spent the weekends in Batson during this time. Mrs. Daniel testified that they intended to return to their home as soon as their child was born. Daniel's testimony threw some cloud on this intent. The trial court resolved the issue in upholding their vote and in this we think he was justified. The voter Floyd Hooks was a single man and lived on what is known as the Wells place about 5 miles out of Batson in the Batson district. On Christmas Eve before the election he came to Batson to stay at a small hotel until he could get better; however, he said it was his intention not to give up the Wells place as that was still his home. The trial court upheld his vote and the evidence justifying a finding either way, we sustain the trial court's conclusion. McBeth v. Streib, supra.

■ The 12th point claims that the vote of Dave Como was void because he was given incorrect instructions by Jim Donohoe, one of the election officials, thus causing him to vote for consolidation when his true intention was to vote against consolidation. The 13th point is like unto it—the implied finding of the trial court that Como did not vote contrary to his intention is against the weight of evidence. The 14th

and 15th points deal similarly with the vote of H. D. Manning and the 16th and 17th points deal similarly with the vote of Paul Stark. The ballot was printed with the words "For Consolidation" above and the words, "Against Consolidation" below. These three voters testified that when they asked Mr. Donohoe how to vote he stated that if they wanted to vote against consolidation they should strike out the bottom line. They claimed that on account of this incorrect instruction they voted for consolidation instead of against it as they intended. However, on cross examination their testimony contradicted their earlier statements. Mr. Donohoe, a man of 80 years, denied giving such incorrect instructions. While on the witness stand he became confused under questioning and at one time did state that he advised them as they contended. However, the trial court heard the testimony, observed the witnesses and we are not inclined to hold that he erred in refusing to exclude the votes of Como, Manning and Stark. The assistance given these voters was not improper. Carter v. White, Tex.Civ.App., 161 S.W.2d 525; McJimsey v. Yates, Tex.Civ.App., 324 S.W.2d 438.

The 19th point urges that the court committed error in failing to exclude the vote of Mrs. Eva Durham because the evidence established as a matter of law that she cast her ballot outside of the voting place in violation of the Election Code. Testimony shows that on election day Mrs. Durham was ill and she rode in a car to the back door of the schoolhouse which was the entrance to the voting place where she cast her ballot. There was no one in the automobile at the time she voted. Art. 8.28 of the Election Code, permitting this method of voting for ill persons was substantially complied with.

The 20th point asserts that the election was void because neither the petition for election, the order calling the election, and notice of time and place of election contained specific metes and bounds description of the Batson School District, in view of the peculiar circumstances of this case. It has been held that no such metes and bounds description is necessary to be given in the instruments mentioned. Baker v. Brown, Tex.Civ.App., 165 S.W.2d 522. But appellants say since there existed confusion as to the boundaries of the district the proceedings should have set forth the boundaries. There was no showing that the confusion kept any qualified voters away from the polls. The point is overruled.

The 21st and last point asserts that the votes of eight persons voting were void because the evidence established as a matter of law that these voters lived outside the Batson School District as it was legally constituted on the date of the election. The original Batson Common School District was formed in 1906 and included a small area lying in and around the town of Batson. The 35th Legislature, at its 4th called session, passed an act creating and establishing the Batson Independent School District which included the area of the original district as well as considerable additional territory. Ch. 3, Special Laws, 35th Leg. This Act described the district by metes and bounds. However, it was shown at the trial that the field notes did not close. The district as constituted appears to be roughly in the shape of a boot, the toe of which points east and the top a little west of north. At the top of the foot or instep the Joel Hawley Survey rests. The field notes call for the boundary to run "thence in a southeasterly direction with the eastern line of the said Hawley League to the southeast corner of the said league." From that point the next call jumps to "thence North with the East line of the G. Garcia League to its Northeast corner." The Garcia League lies adjacent to the Hawley League and the easterly line of the Garcia is co-incident with the westerly line of the Hawley. It thus appears that no call exists between the S.E. corner of the Hawley and its S.W. corner, although it was apparently the intent of the

Legislature that this call be in the field notes. On account of this hiatus appellants contend that the eight voters mentioned in the 21st point who lived outside of the early boundary of the school district but within the northeast section of the district as described in the 1918 Act of the Legislature, were improperly allowed to vote, and that having voted for the consolidation, the court should have held the proposition lost. However, the regular session of the 39th Legislature passed an Act exchanging certain territories between the Batson Independent School District and the Sour Lake Independent School District. A certain area was taken out of the first district and placed in the second, and another area was taken out of the second district and placed in the first. Sec. 1 of this Act excluded all of the foot of the boot area except most of the heel, and in doing so made the most easterly corner of the Garcia League the most eastern point in the revised Batson district, thus eliminating the hiatus in the field notes of the 1918 Act. The Legislature at the same session also passed H.B. No. 445 which amended the original 1918 Act that created the Batson district, redefining the powers and organization of the Board of Trustee and providing how they should be elected from time to time. This amendment and the other Act exchanging territories between the Sour Lake and Batson school districts were approved by the governor on the same date, March 6, 1925. We hold that by the passage of these Acts in 1925 the Legislature cured the error in the original field notes of the 1918 Act and the eight voters were properly allowed to vote in the election.

Appellants' counsel have ably and earnestly presented the various points in their brief. Hence the detailed discussion above. The question, however, whether the ballot box should be opened in this instance is one determined in the trial court's discretion. So viewing the matter, we summarize the valid votes for and against consolidation. Deducting the seven votes illegally cast from the total of 138 for consolidation

leaves 131 votes for, and the votes against consolidation being 128, we hold the proposition for consolidation carried by three votes and affirm the trial court's judgment.

Affirmed.