Hoover DAY, Ralph H. Smith, Troy Simpkins and C. R. Cozart, Appellants,

v.

Lester CRUTCHFIELD, County Judge of Lamar County, Texas, and J. N. Thompson, County Attorney of Lamar County, Texas, Appellees.

No. 7697.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 7, 1965.

Rehearing Denied Dec. 28, 1965.

Buster Cole, Cunningham, Cole & Southerland, Bonham, for appellants.

Henry Braswell, McWhirter & Braswell, Paris, for appellees.

FANNING, Justice.

This is an election contest brought by appellants against the designated statutory defendants challenging the declared results of an election held in the Reno Common School District in Lamar County on September 26, 1964, which election so held was on the question of whether the Powderly Rural High School District and the Reno Common District were to become consolidated. Appellants, residents of the Reno district, timely gave notice under the statute, and filed suit to have the election held void, and/or for a judgment declaring that the true results could not be ascertained and as a result the election be declared void. Issues were joined by amendments of the parties and the case proceeded to trial on appellants' amended petition, appel-

lees' amended reply and answer, and appellants' trial amendment; this after the trial court had sustained numerous exceptions to appellants' amended pleadings. The appeal is on a limited statement of facts, and appellants have designated the points to be relied upon on appeal. Trial was to the court without a jury and resulted in a judgment denying the contest and sustaining the declared results of the election. Exception to the judgment was taken, notice of appeal was given to this court and the appeal was perfected. Appellants' amended motion for new trial was overruled by operation of law, and the case is now before this court for its review upon the limited appeal under proper designations of evidence made by the parties.

Appellants' first point of error is as follows: "The trial court abused his discretion in this case by refusing to open the ballot box, then before the court, and ascertain for himself the true results of the election being contested, where the evidence clearly established that the election judge had certified to and returned a tally list showing the election lost, especially was such refusal abuse of discretion where the evidence showed a wide variance in the votes as counted by her and her certification of the results made by her, and where she used only one election box and all discarded, unused, unvoted and voted ballots were mixed in the one box."

The Commissioners' Court of Lamar County, Texas, canvassed the election returns in the Reno District and declared the results to be 124 votes for consolidation and 116 against consolidation. The following documents were before the canvassing authority when it certified the results of the election and were in evidence in this cause before the trial judge:

1. The returns certificate, whereby the election judge, Mrs. Deweese, certified the total number of votes cast as being 242, the total vote for consolidation as being 124 and the total of the votes against consolidation as being 116. Mrs. Deweese testified that two votes were ruled void and not counted, thus making the total number counted 240.

2. A tally sheet signed by Mrs. Deweese, certifying the total votes "for" as being 124 and the total votes "against" as being 116, but on which the number of marks on the line for "for" votes totals 93 when each vote is counted and the number of marks on the against line totals 111 when each mark is counted.

3. A tally sheet signed by Mrs. Mowrey as a clerk keeping the tally list and certifying the total vote "for" as being 124 and the total vote "against" as being 116 and on which the number of marks agree with the totals.

4. A poll list, which lists 242 persons as having voted.

As above stated, Mrs. Deweese testified that two votes were ruled void and not counted, thus making the total number counted 240.

Mrs. Deweese testified to the effect that in putting her marks on her tally sheet, she simply inadvertently failed to put down as many marks as there were votes for consolidation and that the numerical sum of 124 votes for consolidation, the total stated on her tally sheet, was correct. Mrs. Deweese further testified to the effect that the tally sheet kept by Mrs. Mowrey showing 124 marks and votes "for" and 116 marks and votes "against" was correct.

Mrs. Rice, another election official, testified, and her testimony confirms what Mrs. Deweese testified about the tally sheets and returns. Mrs. Rice testified that she counted the ballots at least three times and to the effect that the tally list signed by Mrs. Mowrey in showing 124 votes "for" and 116 "against" reflected the actual vote. She further testified to the effect that the 93 marks on the "for" line in Mrs. Deweese's tally list was not a correct tally of the votes but that the total figure of 124 "for" on Mrs. Deweese's tally list

**380**

was in accordance with the count made by Mrs. Rice and the other election officials and to the effect that all of the election officials were in agreement when the polls closed that 124 votes had been cast "for" and 116 votes had been cast "against" consolidation.

■ The trial judge was the judge of the credibility of the witnesses and of the weight to be given their testimony and it was within his province to reconcile any inconsistencies, if any, in the evidence adduced.

■ The discrepancy in the marks shown on Mrs. Deweese's tally sheet was explained by her. The trial judge also had the other tally sheet before him, the poll list, and he also heard the testimony of Mrs. Deweese and Mrs. Rice. Apparently the discrepancy in the marks shown on Mrs. Deweese's tally list, as compared to the total of 124 shown thereon, was satisfactorily explained to the trial court by the evidence adduced, both documentary and parol. We think the trial judge was well within the discretion lodged in him when he refused to open the ballot box by reason of the discrepancy in the tally list of Mrs. Deweese above referred to and no abuse of discretion on his part in refusing to open the ballot box for that reason, is shown under the record in this cause. In this connection see the following authorities: 21 Tex.Jur.2d 453; DeLa Garza v. Salinas, Tex.Civ.App., 255 S.W.2d 396, no writ (1953); Jordan v. Overstreet, Tex. Civ.App., 352 S.W.2d 296, error dism. (1961).

Appellants, under their statement and argument under their first point, also assert that there were many irregularities and violation of various articles of the election code in the conduct of said election and contend that by reason thereof the aggregate amounted to legal fraud and that the trial court abused its discretion in not opening the ballot box to ascertain the results of the election.

■ The burden was on the contestants to make allegations of fraud and support them by evidence of probative force showing that the ends of justice would be served before the trial court would be justified in opening the ballot box and conducting a recount. 21 Tex.Jur.2d 453; Sewell v. Chambers, Tex.Civ.App., 209 S.W.2d 363, no writ (1948); Jordan v. Overstreet, Tex.Civ.App., 352 S.W.2d 296, error dism. (1961). We quote from Jordan v. Overstreet, supra, as follows:

"Appellants' first point asserts that the trial court should have ruled that the election had failed to carry for consolidation, because the order of the Commissioners Court declaring the result of the election held in the Batson district, and other evidence, established the proposition did not receive a majority of the valid votes cast. The returns of the election from the Batson voting place made by its officials certified that there were cast 365 votes of which 138 votes were 'for' consolidation and 128 votes 'against' consolidation. The Commissioners Court on January 9, 1961, canvassed these returns and its order declaring the result of the election in the Batson district stated 'there were cast at said election 365 valid and legal votes of which number there were cast for consolidation 138 votes and against consolidation 128 votes.' The order then declared a majority of the qualified voters of said district voted for consolidation. Appellants attack the order of the Commissioners Court declaring this result of the election, asserting that on its face it was shown that a majority did not vote 'for' consolidation and that the proposition for consolidation should be declared lost in the Batson district. It is apparent that an error was made either in the figure 365 showing the total number of votes cast or in the number for or against consolidation. The returns of the election are in evidence. The poll list which was made listing each voter's name revealed that 265 votes were cast in the election. At the trial it was also shown that a Mrs.

Walter B. Johnson voted just before the polls closed, and her name was inadvertently left off the list, thus indicating there were actually 266 votes cast. The tally list of the election officials also was in evidence and reflected 138 votes for consolidation and 128 against consolidation. Ordinarily the order declaring the result of an election by the Commissioners Court is conclusive of the number of votes cast. But it appears the order here involved so declaring is self-contradictory. The returns prepared and delivered by the election officials to the Commissioners Court, we think, clearly show that the election officials made a mistake in the total number of votes cast, and the Commissioners Court carried forward the same mistake. The present is a situation comparable to that of a judgment of a trial court. If the judgment is ambiguous, the judgment roll may be examined to relieve the ambiguity. Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 567, 111 A.L.R. 1152. The trial court examined the 'judgment roll', the various returns of the election officials, to eliminate the ambiguity in the order of the Commissioners Court, and we think he did so properly.

"The 2nd, 3rd, 4th, and 5th points urge that the trial court erred in refusing to grant appellees' request to open the ballot box because of errors and irregularities apparent. Much stress is laid upon the fact that there were 99 'valid and legal votes' which were cast and unaccounted for. We are not persuaded this is true. The detailed records of the election officials as pointed out next above clearly reflected that 266 votes were cast. It is easily seen that an error in failing to put one voter's name on the poll list may take place where polls are open from 7 o'clock a. m. until 7 p. m., and the election officials become weary at the close of the long day. Under such circumstances one person's name could be omitted from the list. In connection with these points, as well as point one, *appellants press upon us*

*the case of Sewell v. Chambers, Tex.Civ. App., 209 S.W.2d 363. We have studied that case carefully but we do not believe it controls the present situation. The last paragraph of the Sewell-Chambers case on p. 366 sums up most of the errors there shown to have taken place, but in addition—we think an important addition —votes were recorded and counted as cast by four persons who had not voted at all and the election officials had counted eleven votes of eleven unknown persons. This we think is undoubtedly 'some evidence' of fraud under Art. 3130, and this together with the many other irregularities justified the opening and examination of the ballots in the ballot box. While there were, undoubtedly, some irregularities in the election now involved, as will be set out hereinafter, we believe they are not of such character as to compel the action sought by appellants. Unless there is substantial evidence of wrongdoing or fraud we think the discretion of the trial court as to whether the ballot box is opened is one that should control. De La Garza v. Salinas, Tex.Civ.App., 255 S.W. 2d 396."* (Emphasis added).

Among appellants' complaints was that there was "used only one election box and all discarded, unused, unvoted and voted ballots were mixed in one box."

In C.J.S., 29 C.J.S. Elections, § 194, p. 548, it is stated:

"Number of boxes. It has generally been held that failure to comply with provisions with respect to the number of ballot boxes is no cause for rejecting the return unless the result has been affected thereby."

In Texas it is the rule that irregularities in the conduct of an election which cannot be shown to have materially affected the results of the election are immaterial. Roberts v. Hall, Tex.Civ.App., 167 S.W.2d 621, no writ (1943); 21 Tex.Jur. 446, Elections, Sec. 179.

This rule was applied in Fowler v. State, 68 Tex. 30, 3 S.W. 255 (1887) where the box was claimed to be of an improper kind. In Vicars v. Stokely, Tex.Civ.App., 296 S.W.2d 599, wr. ref., n. r. e. (1945) it was held that provisions regarding delivery of ballot boxes are directory only.

■ In Lightner v. McCord, 151 S.W. 2d 362 (Civ.App.1941) a school consolidation election was contested on the ground, among others, that separate ballot boxes were not used in the elections as required by law but all of the ballots were deposited in the same box. We quote from the court's opinion as follows:

"It has long been the established rule in this state that statutes regulating the manner of holding elections are merely directory and that a departure from their provisions will not invalidate an election unless such departure or irregularity has affected or changed the result of the election. While appellants exhibit an imposing list of irregularities in the manner in which the election officials conducted these elections, it is not shown nor even contended by appellants that any of them had the effect of falsifying the result of either of the two elections that were held. It has many times been said by our courts that the object of every popular election is to ascertain the will of the qualified electors in the area to be affected thereby upon the issue or issues submitted to them. *Mere informalities that afford no just grounds for the conclusion that the will of the qualified electors has been in any manner thwarted, diverted or suppressed will not be considered of sufficient importance to render an* election void." (Emphasis added).

■ Appellants also complain and contend that Art. 8.15, Texas Election Code, V.A.T.S., which provides how the stub box will be handled and Art. 8.19, Texas Election Code, which controls as to how the ballots are to be deposited and counted, were not observed. In Baker v. Scranton

Independent School District, Tex.Civ.App., 287 S.W.2d 210, no writ (1956), it was held that the provisions of Articles 5.04, 8.07, 8.15 and 8.19, of the Texas Election Code, are directory, and that a failure to comply therewith would not invalidate school bond election, in absence of showing that fraud or misconduct existed or that the irregularities affected the result of the election.

■ With respect to appellants' contention to the effect that the ballot was confusing and called for an interpretation by the election officials we do not think the matter is properly raised for appellate review because it does not appear to be specifically assigned as a ground of error in appellants' statement of points relied on or by reference to appellants' amended motion for new trial. However, we have examined the record concerning said contention and find it to be without merit under the record in this case.

■ With respect to appellants' complaint as to the polls opening ten or eleven minutes before 8:00 A.M. instead of the statutory time of 7:00 A.M., it is our view that this irregularity does not compel the calling of a new election or require the opening of the ballot box under the record in this case. The evidence in the case does not disclose that any voter was disfranchised by the polls not being opened at the proper time. Appellants did not prove that any person appeared to vote between 7:00 A.M. and the time the polls opened, about 10 or 11 minutes before 8:00 A.M., who did not later vote in the day, nor was there any proof that any disqualified person voted by virtue of the time voting commenced. In this connection see Roberts v. Hall, Tex. Civ.App., 167 S.W.2d 621, no writ (1943).

The above referred to matters, and the other irregularities complained of by apellants, we think are all within the purview of the rule that irregularities in the conduct of an election which cannot be shown to have materially affected the result are not

sufficient grounds to set aside an election or require the trial court to open an election box.

In the case at bar the record amply supports implied findings of the trial court to the effect that appellants showed no fraud and that the claimed irregularities did not materially affect the result of the election.

We hold that under the record in this cause it is not shown that the trial court abused its discretion in not opening the ballot box to ascertain the results of the election. Appellants' first point is overruled.

Appellants by their second point contend to the effect that the trial court erred in rendering judgment for the contestees because the evidence conclusively established that there was no provision for absentee voting as provided by law. Appellees by their second counterpoint reply to the effect that the trial court did not err in finding that the manner in which absentee vot-

ing was conducted did not require a judgment setting aside the election or going into the ballot box to conduct a recount.

■■ · The consolidation election was a special election called by the county judge. See Art. 2806, Vernon's Ann.Civ.St. The election was not held at the expense of the county, according to the testimony of the county judge. Art. 5.05, Sec. 1a, Texas Election Code, requires the county clerk to conduct absentee voting in the case of special elections where they are held at the expense of the county. In this connection, see Art. 5.05, Sec. 1a, Texas Election Code, found below,[1] which makes special provisions for the appointment of a clerk for absentee voting in school district elections not held at the expense of the county.

Notice was given of the appointment of an absentee judge, and an absentee clerk, place of absentee voting and the days for absentee voting. Two persons voted absentee with Mr. Proffit, the absentee judge. Mr. Prof-

1. "Subdivision 1a. Elections to which applicable; officer to conduct absentee voting. The provisions of this section shall apply to all elections, general, special, or primary. In general and *special elections held at the expense of the county,* and in primary elections held by political parties for nominating candidates to be voted on at general and special elections held at the expense of the county, *the absentee voting shall be conducted by the county clerk.* In municipal elections, the absentee voting shall be conducted by the city secretary or city clerk.

"*In elections held by school districts, conservation districts, and other defined districts and political subdivisions authorized to hold elections in this state, the absentee voting shall be conducted by a clerk for absentee voting, to be appointed by the governing board of this subdivision,* which may also appoint such number of deputy clerks as it deems necessary to assist in the conduct of the absentee voting. Each clerk and deputy clerk shall be a qualified voter in the subdivision. Persons in the employment of the board shall be eligible for appointment, if otherwise qualified. The board shall designate the place at which the absentee voting shall be conducted, which shall be at the office of the board or at some other public place within the bound-

aries of the subdivision. The board shall designate the hours during which the clerk shall keep the office open, which for the purposes of this section shall constitute the clerk's regular working hours, and shall require that the office remain open for at least eight hours on each day for absentee voting which is not a Saturday, a Sunday, or an official state holiday. The place and hours for absentee voting shall be stated in the order calling the election and in the election notice. The compensation of the clerk and deputy clerks shall be fixed by the board and shall be paid out of the same fund that other expenses of the election are paid. Employees of the board who are designated as clerks or deputy clerks for absentee voting may be required to perform these duties without additional compensation.

"In every election, the absentee voting shall be conducted under the same rules and in the same manner provided in this section for absentee voting conducted by the county clerk, *and all references to the county clerk shall be deemed to mean the appropriate officer for conducting the absentee voting in that election unless the context clearly requires a different construction.* Acts 1963, 58th Leg., p. 1017, ch. 424, § 14." (Emphasis added.)

fit testified that he was notified of his appointment about the time notice was posted, that he kept the absentee voting place 8 hours per day beginning approximately 20 days before the election. There was also an absentee clerk appointed who was there every day during the entire 20 day period. As to absentee voting by mail, there was no evidence adduced that the absentee judge or the absentee clerk, were not ready, willing and able to handle absentee voting by mail, and there was no evidence adduced that anyone contacted the absentee judge or the absentee clerk and requested to vote absentee by mail. Contestants produced one witness, Mr. Harvill, who testified to the effect that he went to the office of the County Clerk to get absentee ballots for himself and for his wife and daughter but the county clerk told him that his office was not furnishing absentee ballots. There was no evidence that Mr. Harvill, his wife or his daughter sought to vote absentee with the absentee judge, or with the absentee clerk. We are of the view that the absentee judge, or the absentee clerk, rather than the county clerk, was the proper authority for Mr. Harvill, his wife and daughter to apply to vote absentee with. However, if we should be mistaken, and if the county clerk was the proper officer, and if it be assumed without deciding that Mr. Harvill, his wife and daughter were actually qualified to vote absentee by mail and if they all three had voted absentee against consolidation, such three votes would not have changed the results of the election, as there was an eight vote majority for consolidation.

Contestants in their initial pleadings plead to the effect that 8 or more persons, constituting a class, were excluded from absentee voting. Special exceptions of contestees to such pleadings were sustained and the trial court required the naming of the parties who were alleged to have been excluded from absentee voting. In subsequent pleadings contestants named some 58 persons. However, only one of the parties named, J. B. Harvill, was called as a witness and he testified as hereinbefore related with reference to himself and his wife and daughter. None of the other 58 alleged disfranchised voters were called to testify and they consequently did not testify that they were qualified voters or that they desired to vote absentee and that they were refused or prevented in any way from voting absentee. Contestants did not elect to produce testimony from any of the other 58 alleged disfranchised voters but merely questioned the election officials about them and they did not by such questioning establish that such persons were qualified voters in the district eligible to vote absentee, who desired to vote absentee and were prevented from voting absentee. As we view it, contestants simply failed to prove what they alleged, with respect to 8 or more qualified electors being prevented from voting absentee.

Appellants' second point is overruled.

Appellants' 3rd, 4th, 5th, 6th, 7th, 8th and 12th points complain of various rulings of the trial court in sustaining special exceptions to contestants' amended petition. We have carefully examined these contentions and the authorities cited by appellants and appellees and we conclude that none of these points present reversible error under the record in this cause. Appellants' points 3, 4, 5, 6, 7, 8 and 12 are overruled.

Appellants' 9th, 10th and 11th points complain of the admission of certain testimony given by Mrs. Deweese and Mrs. Rice. Since the trial was before the court without the aid of a jury, it is presumed that any of such testimony which may have been inadmissible, was not considered by the trial court, as there was other ample evidence of probative force to support the implied findings of the trial court in upholding the validity of the election in question and in refusing to open the ballot box and conduct a recount. Appellants' 9th, 10th and 11th points are deemed as not presenting reversible error under the record in this cause and are overruled. Rule 434, Texas Rules of Civil Procedure.

Appellants, by their 13th point, contend to the effect that the trial court erred in striking paragraph 22 from contestants' original contest and refusing to permit a showing that the two districts involved in the election contest were not contiguous.

The question of contiguity of school districts does not properly arise in an election contest and such is not a proper ground for contesting an election. Such allegations or attacks on the formation of school districts should be stricken from an election contest petition and the trial court's rulings on the matters complained of were correct. In this connection, see the following authorities: Harrison et al. v. Jay, 153 Tex. 460, 271 S.W.2d 388 (1954); Warren v. Robinson, Tex.Civ.App., 32 S.W.2d 871 (1930); Trimmier v. Carlton, Tex.Civ.App., 264 S.W. 253 (1924); Bassell v. Shanklin, Tex.Civ.App., 183 S.W. 105 (1916). Appellants' 13th point is overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.