**John P. THOMPSON, Appellant,**

v.

**Robert C. "Bob" WILLIS, Appellee.**

**No. 09–94–177 CV.**

Court of Appeals of Texas,
Beaumont.

Aug. 4, 1994.

Kent M. Adams, Adams, Coffey & Duesler, Beaumont, for appellant.

Robert E. DeLong, Jr., Smither, Martin, Henderson, Morgan, DeLong & Blazek, Huntsville, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

This is an expedited appeal of an election contest. TEX.ELEC.CODE ANN. § 231.009 (Vernon 1986). Robert C. "Bob" Willis and John P. Thompson sought to be the nominee of the Democratic Party for the office of County Judge of Polk County in the March 1994 primary. After the original vote and a recount, Thompson was the winner by ninety votes. Willis filed suit in the District Court contesting the election. TEX.ELEC.CODE ANN.

§ 221.002 (Vernon 1986). Willis, in his First Amended Petition, alleged certain irregularities in the conduct of the election. First he noted the early votes and mail-in ballots were opened March 7, 1994, and should not have been opened until election day, March 8.[1] He also alleged all members of the Early Voting Board,[2] made markings on ballots "for the ostensible purpose of facilitating their processing by the electronic counting devices of Polk County" instead of making duplicate ballots and one member "took the opportunity to make marks on a large number of early votes or mail-in votes beside the name of Contestant, John P. Thompson, thereby making it appear that votes were cast for him when in fact the voter had cast no such vote for anyone in the County Judge race."[3] He further alleged that because of the marking and alteration of ballots the true results cannot be known or determined and the outcome announced was not the true outcome because fraud, illegal conduct or mistake caused an erroneous result. It was not alleged that Thompson had personally committed any fraudulent acts or illegal conduct.

A visiting judge heard the contest. TEX. ELEC. CODE ANN. § 231.004, § 231.005 (Vernon 1986). Five witnesses testified: the interim County Clerk, the members of the Early Voting Board and a Texas Ranger. It was uncontroverted the County Clerk had instructed members of the early voting board to utilize special graphite pencils to "overmark" ballots. Voters were instructed to mark their ballots with a graphite pencil by completely darkening a printed oval next to a candidate's name. When members of the early voting board saw ballots that were marked, i.e. indicated the choice of a candidate, but were not sufficiently marked[4], they were instructed to "fill in" the oval. Each member of the board was given approximately one-third of the early voting and mail-in ballots to review. Although the members

1. *See* TEX.ELEC.CODE ANN. § 87.022–87.025 (Vernon 1986 & Supp.1994).

2. *See* TEX.ELEC.CODE ANN. § 87.001–87.005 (Vernon 1986 & Supp.1994).

3. This allegation, while briefly mentioned in Finding of Fact 11, apparently played no part in

the trial court's ultimate decision to void the election.

4. Examples are marking a "check", an "x", a dot or a very light mark or simply failing to completely fill in the oval.

were in close proximity, they independently reviewed their portion of the ballots and over-marked the ballots without consulting other members of the board. The number of over-marked ballots was a disputed fact issue. The interim county clerk testified she could not determine the number. One member of the board testified she marked one hundred to one hundred fifty ballots. Another member testified he marked eight to twelve ballots. The third member testified she marked approximately ten ballots. The Texas Ranger testified he reviewed the ballots and made a note of twelve ballots that looked unusual. He also testified there was no "fool-proof" way to segregate out the ballots that had been over-marked by the early voting board.

Thompson urges seven points of error. We shall address them as grouped by Thompson. Points one, two and four concern the evidentiary basis for the court's ruling. The first point alleges no evidence, the second point alleges insufficient evidence and the fourth point attacks the credibility of a witness. The third point alleges the trial court erred in ruling it was impossible to ascertain the true outcome of the election. The fifth point alleges the trial court erred in ruling the election is void and ordering a new election.

The trial judge's findings of fact, in pertinent part, state:

7. There were 2,091 early and absentee votes subjected to the review and marking procedure out of a total of 6,710 votes cast.... Several hundred original ballots appear to have been marked upon during the process. About eighty percent of the total ballots have a neat darkened oval in the space to mark the voter's choice for County Judge and it is not possible to now tell when nor by whom this group of ballots were actually marked.

8. The particular ballots marked upon by the Early Voting Ballot Board cannot be segregated or identified at this time. More than 120 ballots had markings added or small darkened circles placed beside the candidate's name (either Thompson or Willis) by the members of the Early Voting

Ballot Board after original markings had been placed upon them by the voters....

The trial judge's conclusions of law, in pertinent part, state:

2. An "illegal vote" is a vote that is not legally countable. Tex.Elec.Code Ann. § 221.003 (Vernon 1986).

3. The unauthorized assistance provided to more than 120 ballots in the County Judge's race voids each of those ballots....

5. Because of the number of unascertainable illegal votes in this matter, the true outcome of the election cannot be determined at this time.

The trial judge, in the judgment, stated: "... this Court finds that clear and convincing evidence established that unsworn election officials serving on the Early Voting Ballot Board mistakenly engaged in conduct [footnote omitted] which makes it impossible to ascertain the true outcome of this election. These members of the Early Voting Ballot Board marked on the ballots previously marked by voters contrary to Section 127.126 of the Texas Election Code, thereby, in effect, rendering assistance to voters in violation of Chapter 64, Subchapter B, of the Texas Election Code...."

▪ Although Findings of Fact in a judge-tried case are not conclusive when a complete statement of facts appears in the record, great deference must be given to the judge's determination of the witnesses' credibility and the weight to be given their testimony. See *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.]), *writ ref'd n.r.e per curium*, 699 S.W.2d 199 (Tex.1985). It is axiomatic that, in a non-jury case, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. The court has the power to believe or disbelieve all or part of a witness' testimony. *Medrano v. Gleinser*, 769 S.W.2d 687, 689 (Tex.App.—Corpus Christi 1989, no writ). The trial judge is the judge of the credibility of the witnesses and of the weight to be given their testimony and it is within his province to reconcile any inconsistencies. *Day v.*

*Crutchfield,* 400 S.W.2d 377, 380 (Tex.Civ. App.—Texarkana 1965, writ dism'd).

The rule is no different in election contests. *Wilburn v. Galloway,* 179 S.W.2d 540 (Tex.Civ.App.—Beaumont, 1944, no writ), was a school consolidation case. The official canvass showed 42 in favor, 31 against. After the contestants had produced "at least more than 31 witnesses" to testify they had voted against consolidation, the court ordered the ballot box opened. The appellate opinion is unclear as to the number of ballots found to be irregular. However, the court did say: "There was sufficient evidence in this case which, if believed by the court to be true, would have justified the court in finding that, at least, some of the ballots found with the returns of the election were not the ballots actually voted by the voters. We certainly cannot say that under the evidence in this case that the court was unauthorized to reach the conclusion that it was impossible to ascertain the true results of the election...." *Id.* at 542.

■ That ballots were over-marked is certain. The question was the number of over-marked ballots. The trial court's finding of more than 120 ballots having had markings added is certainly within the evidence. Points one, two and four are overruled.

■ Points of error three and five bring into issue conclusions of law three and five. TEX.ELEC.CODE ANN. § 64.031 (Vernon 1986), defines eligibility for assistance; it states: "A voter is eligible to receive assistance in marking the ballot, as provided by this subchapter, if the voter cannot prepare the ballot because of: (1) a physical disability that renders the voter unable to write or see, or (2) an inability to read the language in which the ballot is written." TEX.ELEC.CODE ANN. § 64.037 (Vernon 1986) states: "If assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted."

Three cases speak to this issue. *State ex rel. Lukovich v. Johnston,* 235 S.W.2d 932 (Tex.Civ.App.—Galveston 1951), *rev'd on other grounds,* 150 Tex. 174, 238 S.W.2d 957 (Tex.1951), said at 935:

It is undisputed in the record that the presiding judge ... assisted some 20 or 25 voters in marking their ballots, contrary to said Article 3010 of the Statute regulating the manner of assisting illiterate voters or voters who are physically unable to prepare their ballots which Statute has been held to be mandatory and, while the evidence does not indicate any fraudulent purpose on the part of the officers of the election, this fact does not save the legality of such votes. It is undisputed that the votes which were illegally cast cannot be separated from the legal votes cast and, under the above authorities, the entire vote of the said precinct must be eliminated.

However, the case was reversed because the Supreme Court said the contestant could have produced all the voters in the precinct to determine who was and was not assisted, therefore segregating the questionable votes. Since the contestant made no effort to do so, he did not carry his burden.

*Fuentes v. Howard,* 423 S.W.2d 420 (Tex. Civ.App.—El Paso 1967, writ dism'd), held V.A.T.S., Election Code art. 5.05, § (15) (Vernon 1985), which provided that if assistance is provided a voter other than that assistance allowed by the statute, is mandatory and votes cast in violation of the statute are void. The notary who took the acknowledgement of absentee voters assisted the voter in marking the ballot. There was no evidence that the voters were in the statutory class eligible for assistance. The trial court held the votes were legal votes. The Court of Appeals held the statute was mandatory, not directory, in requiring the votes to be void.

*Green v. Reyes,* 836 S.W.2d 203, 209 (Tex. App.—Houston [14th Dist.] 1992, no writ), upheld the voiding of an election when the trial court found the margin of victory was far surpassed by the number of ascertainable illegal votes.

■ The trial judge was correct in his assessment that the over-markings, however innocent and well-intentioned, constituted improper assistance. There is an evidentiary basis for his finding and conclusion that the exact number of over-marked ballots was unascertainable, thus the true outcome of the

election could not be determined. Point of error three is overruled.

■ Once the trial judge found he could not ascertain the true outcome of the election, he had no choice but to declare the election void. TEX.ELEC.CODE ANN. § 221.-012 (Vernon 1986). Point of error five is overruled.

Point of error six complains of an appendix attached to the judgment. It appears in the following manner in the judgment: "... election officials serving on the Early Voting Ballot Board mistakenly engaged in conduct [Footnote 1]...." Footnote 1 stated:

It should be noted that the members of the Early Voting Ballot Board were in all probability acting in good faith based upon misinformation provided by a vendor who unfortunately was not entirely familiar with the Texas Election Code. See, attached as appendix letter from the Office of Secretary of State dated April 29, 1994....

■ There is no doubt the letter was not part of the trial record, therefore it was error for the trial court to incorporate into or reference it in the judgment. However, there is nothing to indicate the judge relied upon the letter in making any factual or legal determination relevant to the judgment. Thus, we are unable to conclude the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). This point of error is overruled.

■ The final point urges that a new election be limited to only those persons who voted early or cast mail-in ballots. Thompson cites no statute or authority for this approach. See Fredonia State Bank v. Gen-eral American Life Ins. Co., 881 S.W.2d 279 (Tex.1994). This point is overruled.

■ In summary, the right to vote is a "natural right" in our society. Thomas v. Groebl, 147 Tex. 70, 212 S.W.2d 625, 630 (1948). This right and the integrity of the voting process must be zealously protected. The San Antonio court said it well in Alvarez v. Espinoza, 844 S.W.2d 238 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.) when they stated at 249:

The public must have confidence that the election process is fair for all candidates. It is therefore imperative that election officials comply with code procedures.... Cases may arise in which official disregard of the election laws is so pervasive that the courts could not let the election stand, even though the contestant might not be able to prove that the violations caused an incorrect outcome.

Allowing pencils inside the counting area and allowing the unilateral marking of ballots, however innocent and well-intentioned, is certainly not within the duplicate ballot procedure,[5] established by the legislature and is the type of disregard of the election laws mentioned in Alvarez.

The judgment of the trial court is affirmed and reformed to substitute September 13, 1994, for June 7, 1994, see TEX.ELEC.CODE ANN. § 41.001(b)(5) (Vernon Supp.1994), as the date for the election to be held.

AFFIRMED AS REFORMED.

5. TEX.ELEC.CODE ANN. § 127.126 (Vernon 1986 & Supp.1994).