B.E. "Slim" SPEIGHTS, Appellant,

v.

Bob WILLIS, Appellee.

No. 09–02–192 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 19, 2002.

Decided Oct. 24, 2002.

Doug W. Ray, Randall B. Wood, Ray, Wood & Bonilla, LLP, Austin, for appellant.

Larry F. York, Scott K. Field, Keller & Field, LLP, Austin, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

B.E. "Slim" Speights contests the result of the 2000 election for Polk County Commissioner, Precinct 1. Speights claims over 5000 voters were not residents and were not properly registered. *See* TEX. ELEC. CODE ANN. § 11.002(5), (6) (Vernon Supp. 2002). After a bench trial on the merits conducted on April 29 and 30, 2002, the trial court declared Bob Willis the winner of the election.

THE RESIDENCY REQUIREMENT

We consider the residency issue first. "Residence" is defined in the Texas Election Code, in part as follows:

(a) In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.

(b) Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.

(c) A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only.

(d) A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home.

. . . .

TEX. ELEC.CODE ANN. § 1.015 (Vernon Supp.2002). Whether a person is a resident depends on the "circumstances surrounding the person involved and largely depends upon the present intention of the individual." *Mills v. Bartlett,* 377 S.W.2d 636, 637 (Tex.1964). Volition, intention and action are all factors to be considered in determining residence. *See id.*; *see also Slusher v. Streater,* 896 S.W.2d 239, 243–44 (Tex.App.-Houston [1st Dist.] 1995, no writ).

The challenged voters are all members of a club referred to as the Escapees, and are largely full-time travelers; typically, the members own their own recreational vehicles (RVs) and travel around the country extensively. The club owns a 140–acre tract of land in Polk County, Texas called Rainbow's End. Rainbow's End includes 220 lots owned by members, and also has space for RV parking with or without electricity and water. The club provides services to its members, and has an adult day care center on the premises, a library, an activity center, a swimming pool, a club house and a mail-forwarding service.

On the grounds is a building identified as 101 Rainbow Drive, to which mail is delivered for members of the club. Several years ago, the United States Post Office, together with the club's owners, implemented a numbering system to facilitate mail delivery to the members. Mail is addressed to Rainbow Drive with a number assigned for each individual member. Members use these addresses on Texas driver's licenses and on voter registrations.

In his findings of fact, the trial judge found in part as follows:

19. Rainbow's End is a large community of over 140 acres with deeded lots, lease sites, RV parking sites, an activity center, a club house, a library, a pool, and an Adult Day Care Center.

20. Contestant Speights ran for and was elected County Commissioner of Polk County Precinct 1 in 1992 and 1996. Escapees members voted in those elections, as well, and Contestant Speights made no complaint about Escapees members' residency or their respective methods of registration. Contestant Speights actively campaigned for Escapees members' votes in the 2000 election, as well, and, indeed, received over 1,000 votes from voters voting in precincts 19 and 20.

21. Contestant Speights was County Commissioner in 1999, when Polk County submitted a preclearance package to the U.S. Department of Justice pursuant to the Voting Rights Act. At that time, there were too many Escapees registered to vote in one voting precinct. The County decided to split these voters, which the County recognized as legal residents, into two voting precincts by their assigned PMB numbers, with voters whose addresses contained odd-numbered PMBs placed in voting precinct 19 and those with even-numbered PMBs placed in voting precinct 20. Contestant Speights, as County Commissioner, signed off on and approved this preclearance package.

At the time of the 2000 election, 6,000 members were registered to vote in Polk County, and the county divided the voters between two precincts by whether they had odd or even PMB numbers.

Only eight voters testified at trial; each described his or her individual circumstances. Some described little contact with Polk County. Daniel Topping testified to being registered to vote in Polk County. He and his wife own an RV lot in Arizona, and he testified to receiving mail at Mesa, Arizona. He has never been to Polk County. Muriel Ripley first registered as a Polk County voter and obtained her Texas driver's license in 1999. She was last in Polk County in April, 2000. Joseph Beador and Judith Beador own a summer home and an RV lot in California. The Beadors are registered voters in Polk County. He testified that neither of them have ever been to Rainbow's End.

Other voters testified to considerable contacts with Polk County and Rainbow's End, and to their actions and intentions to make their residence there. Janet Hildebrandt has been a full-time RV'er since 1991, and an Escapees member since 1994. She and her husband moved their residence to Rainbow's End in 1995, and in Polk County they registered their vehicle, registered to vote, joined a church and participated in community activities. She stopped traveling and settled permanently at Rainbow's End in June, 2000, after her husband had a stroke. She obtained a five-year lease at Rainbow's End with an option to extend.

Wayne and Audrey Quigle became full-time RV'ers upon Wayne's retirement in 1994. Wayne's driver's license address is 137 Rainbow Drive, No. 3722. The Quigles engage in volunteer mission work while traveling about the country. They moved to Texas to get away from the cold. One of their daughters lives in Texas.

They were aware of the adult care center at Rainbow's End and considered it the best option if they needed to stop traveling and obtain care. When in town, they attend First Methodist Church. A local attorney drafted their will designating an administrator in Texas. Mr. Quigle testified they have a bank account in Polk County and they pay taxes in Polk County. On the day Mr. Quigle testified before the trial judge in this case, Mrs. Quigle was serving jury duty in Polk County.

Wendy Melinger has been an Escapees member since 1994, and a full-time RV'er since 1998. She maintains her bank and investment accounts in Texas, and pays many of her bills through the Escapees Club in Polk County. She comes to Polk County at least once, twice some years, in the spring and the fall. She considers Texas her home. Her Texas driver's license shows her address as 101 Rainbow Drive. Her vehicles are registered in Polk County. She votes in local elections in Polk County. She testified that she loves the area and "would like to have a place at Rainbow's End" when she stops being a full-time RV'er, although she "can't know for sure."

Jacqueline Morris, a retired nurse, moved to Polk County in 1999. Her address is 235 Rainbow Drive, No. 13536. She has served jury duty in Polk County. She has a Texas driver's license, is a member of a local church and has four bank accounts in Polk County. Her lawyer, accountant, veterinarian and doctors are all in Polk County. She insists that all medical tests be done at the Livingston Hospital in Polk County. She intends to live in Polk County when she is required to "hang up the keys."

Residency depends on the circumstances surrounding the individual voter. *See Slusher*, 896 S.W.2d at 243–44. While the Rainbow's End members have a common

means of having their mail delivered, this by itself is not determinative of residency. The evidence at trial established that some of the voters who testified have significant ties to Polk County, and by their actions, decisions and intentions have established residency in Polk County at Rainbow's End. In contrast, some voters testified they had never been to Rainbow's End in Polk County. Other than the eight who testified at trial, however, the trial court was presented with no evidence of the individual circumstances, volition, intention and actions of the more than 5000 voters attacked by contestant.

■ The trial court properly found that "[c]ontestant has not offered proof of a sufficient number of individual voter's volition, intention, or actions with regard to his or her residence for voting purposes." The trial court found that Willis won the election "by a margin of 5,822 votes to 3,065 votes, a difference of 2,757 votes." Declared election results are to be upheld unless there is clear and convincing evidence of an erroneous result. *See Price v. Lewis,* 45 S.W.3d 215, 218 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The trial court correctly concluded that Speights did not meet his burden of proving violations of the Election Code that materially affected the election. *See generally Price,* 45 S.W.3d at 218.

### REGISTRATION

■ We next consider the registration challenge. Speights challenged the address descriptions on voter registration applications filed by over 5,000 voters. The trial court concluded that the voters at issue met the requirements of Section 13.002(c)(7), which provides that a registration application must include "the applicant's residence address or, if the residence has no address, the address at which applicant receives mail and a concise de-

scription of the location of the applicant's residence[.]" *See* TEX. ELEC.CODE ANN. § 13.002(c)(7) (Vernon Supp.2002). The trial court also concluded that "The fewer than 200 votes cast by voters in Polk County voting precincts 19 and 20, who registered to vote by either leaving the residence address box on their voter registration application blank or by indicating that they 'Live in an RV' or something similar, or by using only a rural route were not in sufficient number to affect the outcome of the election."

The trial court heard testimony that the election officials were aware of the physical location of Rainbow Drive described in the applications, and that Polk County was able to place the voters into precincts based on the voter registration application descriptions. The trial court found that in prior years Polk County had confirmed repeatedly the validity of the method of registration challenged here, namely the use of a Rainbow Drive description with a PMB number, and had accepted and used this method of registration.

■ The Texas Election Code is to be interpreted to achieve a just and reasonable result, and a court may consider the statute's purpose in construing its provisions. *In Re Bell,* 45 Tex. Sup.Ct. J. 336, 91 S.W.3d 784, 785 (2002)(failure of petitioning voter to include city and zip code as required by statute did not render the signatures invalid). The address descriptions used by the voters on the registration applications permitted election officials to locate the voters in the proper voting precincts. *See generally Slusher,* 896 S.W.2d at 247. Election officials could assign and verify voting precincts based upon the descriptions furnished in the applications, pursuant to a process established by Polk County and in place for many years. Based on the evidence in this case, the

trial court properly concluded these challenged voters validly registered and "did not cast illegal votes on the basis of this method of registration." The trial court's judgment is affirmed.

AFFIRMED.

DON BURGESS, J., concurs and dissents with written opinion.

DON BURGESS, Justice, concurring and dissenting.

I concur with the majority's holding on the residency issue. Mr. Speights simply did not meet his burden of showing a sufficient number of non-residents voted. However, I respectfully dissent to the registration issue.

This issue involves three pertinent sections of the Election Code. Tex. Elec.Code Ann. § 13.002(c)(7) (Vernon Supp.2002) requires a voter registration application to include "the applicant's residence address or, if the residence has no address, the address at which the applicant receives mail and a concise description of the location of the applicant's residence." Tex. Elec.Code Ann. § 1.005(17) (Vernon Supp. 2002) says " 'Residence address' means the street address and any apartment number, or the address at which mail is received if the residence has no address, and the city, state, and zip code that correspond to a person's residence." Tex. Elec.Code Ann. § 1.015(a) (Vernon Supp.2002) states: "In this code, 'residence' means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence."

While the determination that a person is in fact a resident is a separate inquiry, the statutory definition of residence must be included in the determination of whether a voter properly registered by including a residence address or a description of the applicant's residence. The definition of residence is clear and has two components: a home or fixed place of habitation and the requisite intent.

The majority's description of the scheme established for the members of the Escapees' RV club to establish a mailing address on Rainbow Drive is correct, insofar as it does. The chief operating officer of the club testified that the mail forwarding service, one building, started with a rural route number and box and then selected a street address of 101 Rainbow Drive. She went on to explain that all the addresses on Rainbow Drive, whether they be 101, 201, etc., are in the same location, the mail forwarding service. She further explained that each member is assigned a personal mail box (PMB). She acknowledged that an address such as 101 Rainbow Drive or 124 Rainbow Drive, with a PMB number after it, would not have a lot or house associated with that address.

Speights introduced, as exhibit two, a collection of eighty-nine voter registration applications. These applications, under residence address, reflect thirty-five addresses as 201 Rainbow Drive, eighteen addresses as 200 Rainbow Drive, eighteen addresses as 202 Rainbow Drive, fifteen addresses as 101 Rainbow Drive, two addresses as 217 Rainbow Drive and one address as 124 Rainbow Drive. Speights received certified copies of the voter registration applications for persons who voted [1] in precincts 19 and 20 in the election.[2] He produced evidence that 5,187 voter registration applications had a residence address of either Route 5, Box 3xx or # Rainbow #. There was also evidence

---

1. The number of applications was slightly less than the total voters.

2. Voters using a PMB were placed in either 19 or 20 based upon the PMB.

that of those, less than 100 would have the Route designation. The Escapees' CEO testified Rainbow Drive was approximately a quarter of a mile long. The CEO also testified from a map or plat of the RV park that there were certain deed lots and those numbered approximately 220. According to the plat and the testimony, there are 29 deeded lots that could have a Rainbow Drive Address. The election results show that Mr. Willis received 4,142 votes from precincts 19 and 20 while Mr. Speights received 1,050, or a total of 5,192 votes were cast from those two boxes.

The simple question is whether the address of a mail forwarding service can be a "residence address."[3] I would hold, as a matter of law, it cannot.[4] However, even if factual determinations are necessary, there is overwhelming evidence that: (1) there are, at most, only 29 deed lots on Rainbow Drive (2) Rainbow Drive is about a quarter of a mile long and (3) some 5,000 voters listed their residence address as Rainbow Drive. Disregarding the uncontroverted evidence that these 5,000 persons were only utilizing the mail forwarding building as their residence address and

assuming 29 Rainbow Drive addresses, this translates to 172 persons per address. There is no evidence that each of these lots contained an apartment building capable of being a home or fixed place of habitation for 172 persons.[5] Either way, in my view, the 5,000 or so voters in precincts 19 and 20 were not properly registered, therefore they were ineligible voters. If that is the case, then the true outcome of the election can not be ascertained and the election should be declared void. *Thompson v. Willis*, 881 S.W.2d 221, 225 (Tex.App.-Beaumont 1994, no writ).

The legislature may very well change the definition of "residence" to accommodate persons such as members of the Escapees,[6] but it is not for this court or the trial court to do. Therefore, I respectfully dissent.

---

**3.** *See Alvarez v. Espinoza*, 844 S.W.2d 238, 248 (Tex.App.-San Antonio 1992, writ dism'd w.o.j.) (where the court held that a person with an alleged permanent address that was essentially a place to receive mail was an illegal voter).

**4.** *See Fischer v. Stout*, 741 P.2d 217, 221 (Alaska 1987).

**5.** This is noted very "tongue in cheek".

**6.** For example, "residence" means either domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence or legal domicile, that is, that place which one intends to be their legal residence, without any necessity of a fixed place of habitation or without any intent to maintain an actual residence.