**Opinion issued December 31, 2025.**



**In the**

# Court of Appeals

**for the**

# First District of Texas

_____

**NO. 01-25-00301-CV**
_____

**ANNETTE RAMIREZ, IN HER OFFICIAL CAPACITY AS THE HARRIS COUNTY TAX ASSESSOR-COLLECTOR AND VOTER REGISTRAR,** Appellant

**v.**

**STEVE HOTZE, M.D., JOSEPH L. TRAHAN, CAROLINE KANE, AND THE HONORABLE SID MILLER,** Appellees

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-72883**

---

## MEMORANDUM OPINION

Appellant Annette Ramirez, in her official capacity as the Harris County Tax Assessor-Collector and Voter Registrar (the Registrar) contends that the trial court erred in denying her plea to the jurisdiction because: (1) there has been no

violation of the Texas Election Code[1] because the reference to an "address reclassification" in section 15.022(b) of the Election Code is not a reference to a change of address, (2) appellees lack standing, (3) the Registrar has not waived her immunity, and (4) no *ultra vires* exception applies. We reverse.

## Background

### A.     Appellees' Claims

Eighteen days before the 2024 general election in Harris County, three appellees—Steven Hotze, Joseph Trahan, and Caroline Kane, the original plaintiffs in the trial court—filed suit against Harris County and its then-Registrar, Ann Harris Bennett, the original defendants. At that time, Kane and Trahan were candidates in races appearing on Harris County's general election ballot and appellees stated that Hotze was a political activist. The plaintiffs argued in their suit that Harris County had violated section 276.019 of the Texas Election Code, which provides that: "A public official or election official may not create, alter, modify, waive, or suspend any election standard, practice, or procedure mandated by law or rule in a manner not expressly authorized by this code." The plaintiffs sought declarations that Bennett had engaged in *ultra vires* conduct by violating section 276.019, and by failing in multiple ways to maintain the accuracy and integrity of Harris County's voter registration roll, including by failing "to review

---

[1]     All references herein to the Election Code are to the Texas Election Code.

2

the National Change of Address database on a monthly basis, and, when necessary, investigate specific instances where a voter's registration status in Harris County should be reasonably questioned." The plaintiffs sought injunctions requiring Bennett to correct the alleged failings and prohibiting both Bennett and Harris County from engaging in the future in the conduct alleged to violate section 276.019.

Harris County and Bennett's defenses to appellees' claims included that the Election Code does not require a county voting registrar to review the National Change of Address (NCOA) database on a monthly basis, that governmental immunity barred each of the claims, that the plaintiffs lacked standing to bring their claims, and that the plaintiffs' claims were moot.

## B.     The Plea to the Jurisdiction

In March 2025, Harris County and Bennett's successor, appellant Registrar Annette Ramirez, filed a plea to the jurisdiction in which they argued that (1) the plaintiffs lacked standing, for reasons including that Kane and Trahan, who had lost their respective elections, were no longer candidates for office; (2) the defendants are immune from suit, for reasons including that Harris County (including the Registrar) has no duty to conduct a monthly review of the NCOA database; and (3) the Uniform Declaratory Judgments Act (UDJA) does not confer on appellees standing or jurisdiction for the claims asserted in this lawsuit.

In April 2025, the plaintiffs argued in response that they had standing as Harris County residents, voters, and taxpayers; because Kane and Trahan "had a right to be candidates in a political election which was free from illegal voting"; and because Hotze's "constitutionally protected right to vote in the past election was diluted by the presence of votes which were cast but should not have been counted." They argued further that their claims were not moot, taking the position that the challenged conduct is capable of repetition yet evading review. The plaintiffs contended that Harris County and the Registrar are not immune from suit for reasons including that (1) the Registrar engaged in *ultra vires* acts, including failing to conduct a monthly review of the NCOA database; (2) Harris County's presence in the suit was necessary to effectuate and bind it and appellant to a judicial declaration; and (3) the UDJA contains waivers of governmental immunity, such as the requirement, in section 37.006(b) of the Texas Civil Practice and Remedies Code, that a municipality must be made a party to suits challenging the validity of a municipal ordinance.

## C.    Appellees' Amended Pleading

On the same day that the original plaintiffs filed their response to Harris County and the Registrar's plea to the jurisdiction, they also filed an amended petition in which they added appellee Texas Agriculture Commissioner Sid Miller

4

as a plaintiff.[2] Miller is only referenced in the amended pleading as being a resident of Erath County. Miller was re-elected to his position as Agriculture Commissioner in 2022 and was not a candidate in a race appearing on Harris County's general election ballot in 2024.[3]

In their amended pleading, appellees made no updates to change references to Bennett to references to Ramirez. Appellees continued to allege that Bennett had failed to maintain the accuracy and integrity of the Harris County voter registration roll by failing to review the NCOA database on a monthly basis and "investigate specific instances where a voter's registration status in Harris County should be reasonably questioned." Appellees alleged that Bennett had included on Harris County's voter registration roll "hundreds of thousands" of individuals who should not be there, including individuals who are deceased, felons, not residents of Harris County, not citizens of the United States, "not related to each other but . . . registered at the same address," "registered at post office or private mail boxes with commercial mail receiving agencies," or registered at a commercial address at which they do not reside, and/or "claim to live on vacant property with no

---

[2] Because the amended petition was filed before the trial court ruled on the Registrar's plea to the jurisdiction, we treat it as appellees' live pleading. *See Patel v. Trevino*, No. 01-20-00445-CV, 2022 WL 3720135, *1 n.4 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet.) (mem. op.) (holding that amended pleading filed after plea to jurisdiction, but before hearing on plea, was live pleading).

[3] Appellees added Miller as a plaintiff after the Registrar filed her plea to the jurisdiction, on the same day that appellees filed their response. Appellees do not mention Miller in their response.

structure, utilities, or other indicia of actual residency." Appellees appeared to also allege that Bennett had failed to add to the suspense list all voters on the Harris County voter registration roll who should be on that list and permitted suspense voters to vote despite having "not properly filled out a statement of residence form."

Appellees sought "the following declaratory and injunctive relief":

(i) to force the Harris County Voter Registrar to monitor and maintain the accuracy and integrity of Harris County's voter registration roll;

(ii) to remove those listed on the voter registration role who are not eligible to remain listed;

(iii) to review the National Change of Address database on a monthly basis, and, when necessary, investigate specific instances where a voter's registration status in Harris County should be reasonably questioned;

(iv) to promptly review and determine challenges to the registration status of a voter;

(v) to promptly initiate confirmation notices to voters whose registration status has or may have come into question;

(vi) to ensure that voters are placed on a suspense list so that their current residency credentials may be determined through a statement of residence form required to be filled out as a prerequisite to voting; and

(vii) all other actions necessary to force compliance with the voter registration roll in order to stop her ultra vires conduct.

Appellees also asked the trial court to enjoin Harris County and Bennett from "continuing to violate Chapter 276.019 of the Texas Election Code as described above."

## D.     Denial of Registrar's Plea to Jurisdiction

On April 8, 2025, the trial court held a hearing on Harris County and the Registrar's plea to the jurisdiction. On April 10, 2025, without stating its reasoning, the trial court granted Harris County's plea to the jurisdiction (which ruling appellees have not challenged) and denied the Registrar's.

## E.     Appeal

The Registrar then filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7). On appeal, the Registrar argues that the trial court erred in denying her plea to the jurisdiction because appellees lack standing and she has immunity from their claims. The Registrar argues that appellees do not have standing because they have pleaded only a generalized grievance, not a concrete and particularized actual or imminent injury, and do not have taxpayer standing, candidate standing, or standing under section 273.081 of the Election Code. The Registrar argues further that she has immunity from appellees' claims because appellees have failed to show that she engaged in *ultra vires* conduct, and because appellees have pleaded no applicable statutory waiver of immunity. At oral

argument, appellees confirmed that the *ultra vires* conduct at issue is the Registrar's alleged failure to comply with section 15.022 of the Election Code.

## Election Code

Certain Election Code provisions have particular impact on our consideration of the jurisdictional issues raised by the Registrar in her appeal.

### A. Residency Requirement

To be eligible to vote in Texas, a person must "be a resident of the territory covered by the election for the office or measure on which the person desires to vote." TEX. ELEC. CODE § 11.001(a)(2). Residency as the term is used in the Election Code is a determination involving multiple considerations, including an individual's circumstances and intent. *Medlin v. King*, 705 S.W.3d 267, 291 (Tex. App.—El Paso 2024, pet. denied). The Election Code defines "residence" as "domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence." *Id*. § 1.015(a). A person "does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only," *id*. § 1.015(c), and "does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home," *id*. § 1.015(d).

**B.     Statement of Residence**

A statement of residence (SOR) is a form requesting residence-related information and affirmations that multiple categories of voters are required to complete and submit to an election official in their county of residence before being accepted for voting. *See* TEX. ELEC. CODE §§ 63.0011(a)-(c), 86.002(a), 15.112. A voter who submits an SOR affirms that the voter is a resident of the county in which the voter seeks to vote. *Id.* §§ 63.0011(c)(1)-(2), 13.002(c)(4).

Voters whose residence address is not current because they have changed residence within a county may still vote in that county if they submit an SOR affirming that they remain a county resident. *Id.* §§ 63.0011(a)-(c), 84.001(a), 84.001(d), 86.002(a). Voters who appear on the Texas Secretary of State's suspense list are also required to submit an SOR before voting. *Id.* §§ 86.002(a), 15.112. A voter may be added to the suspense list if, among other reasons, the voter fails to respond to a voter registrar request for confirmation of residence, if a confirmation request is returned to the registrar undelivered, or if the voter registration certificate that the registrar sends every two years to all registered voters not on the suspense list (referred to as a "renewal certificate") is returned undelivered. *Id.* §§ 15.051, 15.053, 15.081.

**C.    Section 14.022 (Erroneous Return of Renewal Certificate)**

A voter registrar's renewal certificate may be returned undelivered due to "postal service error, address reclassification, or the registrar's clerical error." *Id.* § 14.022. In contemplation of such errors, section 14.022 of the Election Code, titled "Erroneous Return of Renewal Certificate," provides that:

> If the registrar determines that a voter's renewal certificate was returned undelivered solely because of postal service error, address reclassification, or the registrar's clerical error, the registrar shall delete the voter's name from the suspense list, make any other appropriate corrections in the registration records, and deliver the certificate to the voter.

**D.    Section 15.022 (Correction of Registration Records)**

Section 15.022 of the Election Code, titled "Correction of Registration Records," lists other circumstances under which a registrar must make "appropriate corrections in the registration records, including, if necessary, deleting a voter's name from the suspense list." TEX. ELEC. CODE § 15.022(a). Such circumstances include, for example, a change in the boundary of an election precinct, the registrar's receipt of notice that a data entry error caused a voter's name to be inadvertently left off the list of registered voters for the precinct, the registrar's receipt of a voter's SOR, or the registrar's receipt of notice that a voter has updated the voter's residence address on the voter's voter registration or driver's license. TEX. ELEC. CODE §§ 15.022(a)(1), (4), (5), (8), (9).

10

At issue here is the requirement set forth in section 15.022(a) that the registrar must make appropriate corrections in the registration records "after receipt of [USPS] information indicating an address reclassification." *Id.* § 15.022(a)(6). The Election Code does not define the term "address reclassification," and it does not appear in any Texas statute other than once in section 14.022 and twice in section 15.022 of the Election Code.[4] Section 15.022(b) states that, "[a]t least monthly, the registrar shall request from the [USPS] any available information indicating address reclassifications affecting the registered voters of the county."

## Plea to the Jurisdiction

### A. Standard of Review

We review de novo a trial court's denial of a plea to the jurisdiction on standing or immunity grounds. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). ("Because a plea to the jurisdiction raises a question of standing, we also review a plea to the jurisdiction de novo."); *Deville v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 634 S.W.3d 324, 329 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("A governmental entity can raise its immunity from suit in a plea to the jurisdiction, and we review de novo the trial court's ruling

---

[4] The term "address reclassification" does not appear in the United States Code or federal case law, other than in a single decision quoting without discussing section 15.022(b) of the Texas Election Code. *See Gilmore v. Jones*, 370 F. Supp. 3d 630, 648 n.11 (W.D. Va. 2019).

11

on the plea." (citing *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018))). To the extent we must interpret statutory provisions affecting our jurisdiction, our review remains de novo because the proper interpretation of a statute is a question of law. *Davis v. Morath*, 624 S.W.3d 215, 221 (Tex. 2021).

When a plea to the jurisdiction challenges a plaintiff's pleading, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 393 (Tex. 2022). Bare conclusory allegations are insufficient to defeat a plea to the jurisdiction. *See State v. Lueck*, 290 S.W.3d 876, 881-85 (Tex. 2009) (where jurisdiction depended on plaintiff's having pleaded allegations that, if true, would establish violation of Whistleblower Act, holding that plaintiff's pleading was required to address essential elements of violation to defeat plea to the jurisdiction, noting that "[a]llowing a plaintiff's pleadings to stand on bare allegations, alone, . . . would practically eliminate the use of pleas to the jurisdiction"); *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007) (where jurisdiction depended on plaintiff's having pleaded allegations that, if true, would establish gross negligence, holding that "conclusory allegations" that failed to demonstrate defendant's awareness of and conscious indifference to risk were insufficient to defeat plea to the jurisdiction); *Pena v. City of Garland*, No. 05-21-00611-CV, 2021 WL 6143710, at *3 (Tex. App.—Dallas Dec. 30, 2021, no pet.) (mem. op.)

(where jurisdiction depended on plaintiff's having pleaded allegations that, if true, would establish municipal defendant's actual knowledge, holding that "bare allegations that the City had actual knowledge" were insufficient to defeat plea to the jurisdiction (citing *Lueck*, 290 S.W.3d at 884-85)). Similarly, we are not bound by the plaintiff's legal conclusions. *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 68 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Wilson v. Cmty. Health Choice Tex., Inc.*, 607 S.W.3d 843, 851 (Tex. App.—Austin 2020, pet. denied) (noting that, when reviewing trial court's order on plea to jurisdiction, "[m]ere unsupported legal conclusions do not suffice" to satisfy plaintiff's burden to demonstrate trial court's jurisdiction).

If the pleading does not contain sufficient facts to demonstrate the court's jurisdiction but also does not affirmatively demonstrate incurable defects, the plaintiff should be given an opportunity to amend. *Dohlen*, 643 S.W.3d at 393. If the pleading affirmatively negates jurisdiction, then the plea to the jurisdiction should be granted without the opportunity to amend. *Id.*

**B.      Standing**

Because appellees seek only declaratory and injunctive relief, and all seek the same relief, only one of them must have standing. *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 6 (Tex. 2011) (citing *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 627 (Tex. 1996)). Contrary to the

13

Registrar's position on appeal, a threshold inquiry into standing would not depend on the merits of appellees' contention that the Registrar's failure to conduct a monthly review of the NCOA database violates section 15.022(b) of the Election Code. *See id*. at 7 (noting that threshold inquiry into whether voter had standing to pursue claims did not depend on merits of her contention that particular conduct is illegal (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Warth v. Seldin*, 422 U.S. 490, 500 (1975))). However, we need not reach the question of whether any of appellees has standing because, even if one of them has standing, appellees have not shown that the Registrar either has no immunity or waived her immunity from suit under the circumstances at issue. *See, e.g.*, *id.* at 11-14 (holding that supreme court lacked subject-matter jurisdiction over equal protection claim based on county's use of electronic voting system because, even though voters had standing to bring claim, Secretary of State retained immunity from suit because claim was not viable); *Ramsey v. Miller*, No. 02-22-00412-CV, 2023 WL 3645468, at *4 n.5 (Tex. App.—Fort Worth May 25, 2023, pet. denied) (mem. op.) (noting that, even if court of appeals were to assume that appellants had standing to bring equal protection claim based on county's use of electronic voting system, it would still lack subject matter jurisdiction because claim was not viable and county would thus retain governmental immunity (citing *Andrade*, 345 S.W.3d at 6)).

14

## C. Immunity

In the trial court, appellees argued that Harris County's immunity from suit was waived under Texas's Declaratory Judgment Act (DJA) and that the Registrar has engaged in *ultra vires* conduct for which she has no immunity from suit. To the extent appellees claim that the Registrar's immunity from suit is waived under the DJA, that argument is incorrect. Appellees appear to contend that language in sections 37.002(b), 37.003(a), 37.004(a), and 37.006(b) of the Texas Civil Practice and Remedies Code constitutes such a waiver. Appellees also claim, without support, that the DJA contains "a waiver of immunity from suit for governmental bodies whose presence is necessary to effectuate and bind them to a judicial declaration."[5]

The DJA contains no general waiver of sovereign immunity for claims for declaratory judgment against the government, and instead provides only a limited waiver for challenges to the validity of an ordinance or statute. *State v. Zurawski*, 690 S.W.3d 644, 660 (Tex. 2024).[6] Claims for other types of declaratory relief,

---

[5] Appellees made the necessary party argument in the trial court only as to "Harris County" but, on appeal, direct it toward the Registrar.

[6] *See also Martinez v. Northern*, No. 01-22-00435-CV, 2023 WL 162743, at *8 (Tex. App.—Houston [1st Dist.] Jan. 12, 2023, pet. denied) (mem. op.) (rejecting argument that DJA "contains a waiver of immunity from suit for governmental bodies whose presence is necessary to effectuate and bind them to a judicial declaration"); *Green v. Harris Cnty. Inst. of Forensic Scis.*, No. 01-20-00357-CV, 2021 WL 3159801, at *4 (Tex. App.—Houston [1st Dist.] July 27, 2021, pet. denied) (noting both broad purpose of DJA under section 37.002(b) of Texas Civil

including those merely seeking guidance about the application of the law to particular facts, are barred absent a legislative waiver of immunity with respect to the underlying action. *Id.* at 661. Because appellees do not challenge the validity of a statute or ordinance, the DJA provides no waiver of immunity. We thus turn to appellees' argument that the Registrar has engaged in *ultra vires* conduct for which she has no immunity from suit.

### 1. Applicable law

A suit against a government official can proceed even in the absence of a waiver of immunity if the official's actions are *ultra vires*. *Chambers-Liberty Navigation Dist. v. State*, 575 S.W.3d 339, 344-45 (Tex. 2019). To demonstrate that government officers acted *ultra vires*, a plaintiff must show that the officers acted without legal authority or failed to perform a purely ministerial act. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022) (noting that "an *ultra vires* claim may not be maintained if the officials' acts are within their discretion"). An act is without legal authority if it requires discretion or judgment and the officer "exceeds the bounds of his granted authority or if his acts conflict with the law

Practice and Remedies Code and that DJA waiver for non-*ultra vires* claims is limited to claims challenging validity of statute or ordinance); *Fallon v. Univ. of Tex. MD Anderson Cancer Ctr.*, 586 S.W.3d 37, 56 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (discussing interaction of sections 37.003(a), 37.004(a), and 37.006(b) in context of rule that DJA provides only limited waiver of sovereign immunity for claims challenging validity or constitutionality of statute or ordinance).

itself." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). An act is ministerial if the law "prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Van Boven v. Freshour*, 659 S.W.3d 396, 402 (Tex. 2022) (citation modified).

"We apply the plain meaning of statutory language unless (1) the Legislature has prescribed definitions, (2) the words have acquired a technical or particular meaning, (3) a contrary intention is apparent from the context, or (4) a plain-meaning construction leads to nonsensical or absurd results." *In re Tex. Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021) (orig. proceeding). We endeavor to afford meaning to all of a statute's language such that none is rendered surplusage. *Id.* at 687-88. We construe the Legislature's chosen words and phrases "within the context and framework of the statute as a whole, not in isolation." *Id.* at 687.

When a statute is not ambiguous on its face, it is inappropriate to use extrinsic aids to construe the unambiguous statutory language. *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 38 (Tex. 2018) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008)). A statute is ambiguous if its words are susceptible to two or more reasonable interpretations and we cannot discern legislative intent from the language alone. *Id.* (citing *Tex.*

*State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 41 (Tex. 2017)). We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired. *Id.* (citing TEX. GOV'T CODE § 311.011(b); *City of Rockwall*, 246 S.W.3d at 625)). Otherwise, we construe the statute's words according to their plain and common meaning. *Id.* (citing TEX. GOV'T CODE § 311.011(a); *City of Rockwall*, 246 S.W.3d at 625-26).

### 2. Alleged *ultra vires* conduct

The Registrar argues that appellees have not pleaded facts that, if true, would show that the Registrar failed to comply with sections 15.022(a)(6) and (b) of the Election Code and thus committed an *ultra vires* act. We agree.

Appellees' position is that the Registrar has acted *ultra vires* in violation of sections 15.022(a)(6) and (b), which require the Registrar to make "appropriate corrections in the registration records . . . after receipt of [USPS] information indicating an address reclassification" and, at least monthly, to request from the USPS "any available information indicating address reclassifications affecting the registered voters of the county." TEX. ELEC. CODE § 15.022(a)(6), (b). Appellees assert that the term "address reclassification" includes changes of address and that these sections required the Registrar to "perform[] her obligation every month to compare [the] Voter Role [sic] with the NCOA database" and then, on the basis of any "discrepancies" between the two, send out residency confirmation notices.

18

Appellees contend that the Registrar has improperly failed, on a monthly basis, to identify and send residency confirmations to individuals on the Harris County voter roll who, according to the NCOA database, have submitted a request to receive mail at an address outside Harris County. Appellees allege further that, had the Registrar performed that obligation, each such confirmation notice would have "result[ed] in a particular person either remaining or coming off of the list of eligible registered voters" because "challenged voters would have been asked to supply a[n] SOR upon check-in for voting or as a condition to cast a ballot by mail." Appellees claim that the Registrar's failure to comply with their interpretation of section 15.022 means that "a Court will be unable to ascertain whether these specific voters did or did not cast a legal vote in the specific election that is eventually contested in Harris County."[7] Appellees claim that "a simple

---

[7] Appellees offer no support for this claim and we have found none. Texas courts for many years made residency determinations in election contests without reference to SORs. *See, e.g.*, *De La Paz v. Gutierrez*, No. 13-18-00377-CV, 2018 WL 5289553, at *2-3 (Tex. App.—Corpus Christi–Edinburg Oct. 25, 2018, no pet.) (mem. op.); *Rivera v. Lopez*, No. 13-14-00581-CV, 2014 WL 8843788, at *9-10 (Tex. App.—Corpus Christi–Edinburg May 14, 2014, no pet.) (mem. op.); *McDuffee v. Miller*, 327 S.W.3d 808, 816-20 (Tex. App.—Beaumont 2010, no pet.); *Kiehne v. Jones*, 247 S.W.3d 259, 264-66 (Tex. App.—El Paso 2007, pet. denied); *Speights v. Willis*, 88 S.W.3d 817, 820-21 (Tex. App.—Beaumont 2002, no pet.); *Slusher v. Streater*, 896 S.W.2d 239, 243-46 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Alvarez v. Espinoza*, 844 S.W.2d 238, 246 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.). More recently, SORs have been used as some, but not conclusive, evidence to be considered in such a determination. *See, e.g.*, *Medlin v. King*, 705 S.W.3d 267, 293-308 (Tex. App.—El Paso 2024, pet. denied) (considering statements in SOR as some but not conclusive evidence of voters' residency); *Rodriguez v. Rangel*, 679 S.W.3d 890, 916-17 (Tex. App.—San

19

comparison of: (i) [SORs] to the NCOA database; and/or (ii) a comparison of the Harris County Voter Roster to the NCOA database" would "reveal countless instances whereby voters cast a ballot in Harris County elections, despite the fact that they previously have told the [USPS] that they have an address which calls into question whether that individual is or is not currently still eligible to vote."

Appellees' interpretation of the term "address reclassification" in section 15.022 of the Election Code is untenable, particularly when that section is considered within the context and framework of the Code as a whole. First, interpreting the term "address reclassification" as meaning a voter's change of address is not a plain-meaning construction of the term. *Cf. FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238, 262 (Tex. App.—Fort Worth 2016, pet. denied) (noting Webster's Third New International Dictionary definition of "classification" as "a system of classes or groups or a systematic division of a series of related phenomena [into] one of such classes"). Voters who request to receive mail at a new address have changed rather than "reclassified" their address.

Indeed, when the Legislature references a request to change a voter's address on the voter's driver's license and (typically) voter registration, the

Antonio 2023, pet. denied) (considering statement in SOR as some but not conclusive evidence of voter's residency); *see also Medlin*, 705 S.W.3d at 312 (voter's statement regarding residence that conflicts with other evidence of residence cannot on its own establish residence); *Woods v. Legg*, 363 S.W.3d 710, 715 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (noting that residency must be established by nexus of factors; one element alone is insufficient).

Legislature references a "*change of address* that relates to a license" and "*change of address* for voter registration." *See* TEX. ELEC. CODE § 20.063(c) (emphasis added). Similarly, elsewhere in the Code, the Legislature makes express reference to the NCOA database. *See* TEX. ELEC. CODE §§ 18.062(h)(2), (i) (referencing "National Change of Address database"). The Legislature's express references to "changes of address" and the NCOA database elsewhere in the Code further undermines appellees' proposed interpretation of sections 15.022(a)(6) and (b) as referencing, respectively, changes of address and the NCOA database. *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 176 (Tex. 2013) (rejecting interpretation of statutory use of term "costs" as encompassing "litigation costs" due in part to express use of term "litigation costs" elsewhere in statute).

Second, interpreting the term "address reclassification" as appellees propose would not make sense in the context of section 14.022 of the Election Code. Section 14.022, titled "Erroneous Return of Renewal Certificate," provides that:

> If the registrar determines that a voter's renewal certificate was returned undelivered solely because of postal service error, address reclassification, or the registrar's clerical error, the registrar shall delete the voter's name from the suspense list, make any other appropriate corrections in the registration records, and deliver the certificate to the voter.

At least two of the three factual scenarios referenced in section 14.022 are circumstances under which a renewal certificate sent by the registrar to a voter would be returned undelivered through no fault of the voter: a postal service error

or the registrar's clerical error. Appellees' proposed interpretation of the third scenario as referencing a renewal certificate that is returned undeliverable because the voter has changed the voter's address for mail delivery is illogical because the change of address would presumably help ensure rather than impede delivery of the renewal certificate to the voter. And if the change of address did prevent delivery of the renewal certificate to the voter, the certificate's return undelivered could not be considered an erroneous return.

Third, under the Election Code, a Harris County voter's submission of a request to receive mail at an address outside Harris County does not create a registration records "discrepancy" as claimed by appellees. As discussed above, a voter's "residence" is the voter's "home and fixed place of habitation to which one intends to return after any temporary absence," TEX. ELEC. CODE § 1.015(a), and residency is thus a determination involving multiple considerations, including an individual's circumstances and intent. *Medlin v. King*, 705 S.W.3d 267, 291 (Tex. App.—El Paso 2024, pet. denied). No single factor, including the address at which someone has their mail delivered, is determinative of residency. *Id.*; *Olsen v. Cox*, No. 14-23-00893-CV, 2025 WL 2399150, at *4 (Tex. App.—Houston [14th Dist.] Aug. 19, 2025, no pet. h.) (mem. op.) ("The address where someone has their mail delivered 'by itself is not determinative of residency.'" (quoting *Speights v. Willis*, 88 S.W.3d 817, 820-21 (Tex. App.—Beaumont 2002, no pet.))).

DPS provides each person who applies for an original, renewed, or corrected driver's license the opportunity to complete a voter registration application. TEX. ELEC. CODE §§ 20.063(a), (b). The Election Code treats a change of address submitted to the DPS as a change of address for voter registration absent an indication that is not the voter's intent. *Id.* § 20.063(c). The Election Code does not give similar treatment to a change of address submitted to the USPS. Nor does the Election Code state that a change of address submitted to the USPS is a "reason to believe that a voter's current residence is different from that indicated on the registration records" that requires a voter registrar to "deliver to the voter a written confirmation notice requesting confirmation of the voter's current residence" under section 15.051 of the Election Code, putting into motion a series of events that could result in the voter's being placed on the suspense list, *see* TEX. ELEC. CODE §§ 15.051-.054, 15.081, and having to submit an SOR before being permitted to vote, *see id.* § 15.112.

For these reasons, we agree with the Registrar that the plain meaning of the term "address reclassification" as used in sections 14.022 and 15.022 of the Election Code is a USPS reclassification of an address and not a voter's change of the address at which the voter receives mail. The Registrar points to legislative history that she argues corroborates that reading, including evidence that the term "address reclassification" references USPS actions such as reclassifying "Airport

23

Boulevard" as "Airport Drive."[8] Because we conclude that appellees' interpretation of Section 15.022, which the trial court appears to have adopted, is not a reasonable interpretation, particularly when the statute is considered in the context of the Election Code as a whole, we need not consider the statute's legislative history. *See Willacy Cnty. Appraisal Dist.*, 555 S.W.3d at 38 (noting that use of extrinsic aids to construe statutory language is appropriate only if it is ambiguous, including being susceptible to multiple reasonable interpretations).

For these reasons, we conclude that the *ultra vires* exception does not apply as an exception to the Registrar's immunity from suit, and that the trial court erred in rejecting the Registrar's plea to the jurisdiction.

## D. Opportunity to Replead

Because appellees' pleading affirmatively negates jurisdiction, we further conclude that the trial court should have granted the Registrar's plea to the jurisdiction without giving appellees the opportunity to amend. *Dohlen*, 643

---

[8] The Registrar alleges, for example, that: (1) the NCOA database did not exist at the time the Legislature adopted section 15.022(b); (2) bills such as H.B. 3046 (2009), H.B. 1100 (2011), and H.B. 198 (2013) have unsuccessfully sought to amend section 15.022(a)(6) and (b) to include information available from the NCOA database as part of the information that a voter registrar must take into consideration, where appropriate, in making corrections to registration records; (3) testimony at an April 20, 2005 hearing before the House Elections Committee indicates that the Legislature purposefully did not reference the NCOA database in section 15.022 given that a change of address for mail delivery does not necessarily mean a change of permanent residence; and (4) other testimony at that hearing indicates that a past Texas Secretary of State took the position that references to an "address reclassification" in section 15.022 are references to a USPS action such as reclassifying "Airport Boulevard" as "Airport Drive."

S.W.3d at 393 (if pleading affirmatively negates jurisdiction, then plea to jurisdiction should be granted without opportunity to amend).

## Conclusion

We reverse the trial court's denial of the Registrar's plea to the jurisdiction and render judgment dismissing appellees' suit for lack of jurisdiction.


Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.